Opinion issued December 4, 2003





















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-01193-CR
____________
 
RUBEN GARCIA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 819008
 

 
 
MEMORANDUM OPINION
          After the trial court denied his motions to suppress evidence, appellant, Ruben
Garcia, pleaded guilty, without an agreed punishment recommendation from the State,
to possession with intent to deliver cocaine weighing at least 400 grams.


 The trial
court found appellant guilty and assessed his punishment at confinement for 15 years
with a fine of $1,000. 
          In 12 issues, appellant contends that the trial court erred in denying his motions
to suppress evidence because: a warrantless stop and entry of his car violated his
constitutional rights against unreasonable searches and seizures;


 a warrantless entry
and search of his residence violated his constitutional rights against unreasonable
searches and seizures; a subsequent search of his residence, conducted pursuant to a
search warrant, was tainted by the warrantless search of his car and residence; and 
the search warrant in question was not based on probable cause. We affirm.
Background
          On July 21, 1999, Houston Police Officer D. Green negotiated an undercover
purchase of one kilogram of cocaine from a narcotics suspect, Julio Garcia, to take
place at a restaurant. When Officer Green and Garcia arrived at the restaurant, a man
named Jorge Garza took Garcia’s black Lexus sedan and left to retrieve the cocaine. 
Houston Police Officers T. Walker and D. Davis, members of a surveillance team,
followed Garza and saw him park the Lexus in front of a house at 1523 Hendrix, but
they did not see anyone enter or exit the house. Five minutes later, Garza left the
house and drove directly back to the restaurant, while Officers Walker and Davis
remained nearby to watch the house. 
          Officer Green testified that when Garza came inside the restaurant, he tossed
Garcia the keys to the Lexus and said something in Spanish to Garcia. Green and
Garcia then went outside, got into the Lexus, and Garcia drove the car around the
block. Garcia told Green that the cocaine was under the passenger-side floor mat, and
Green pulled back the floor mat and found a brick of cocaine. After Green and
Garcia returned to the restaurant, Houston Police officers arrested Garcia and Garza
and recovered a kilogram of cocaine from the Lexus.
          After Officers Walker and Davis were informed that cocaine had been found
inside the Lexus, they saw a black Corvette, driven by appellant, back out of the
driveway of the residence at 1523 Hendrix. The officers quickly stopped the Corvette
and blocked it with their patrol car. The officers then approached appellant,
identified themselves as police officers, and showed him their badges. Officer
Walker told appellant that “he could contact a lawyer, but at that point he was going
to be detained until the other officers could arrive to try and get a search warrant for
the house.” Walker then asked appellant to get out of the car, and appellant complied. 
When Walker asked appellant for consent to search the car, appellant refused.           Officer Walker testified that the cars had created a “bottleneck” and prevented
traffic from turning onto Hendrix street. Walker further testified that he “moved [his
patrol] car and I told [appellant] I was going to move his car.” Appellant did not
respond, and Walker went over to move the car to the side of the street. Officer Davis
testified, “I was still on the passenger side, and we both just happened to kind of look
in the car at the same time as [Walker] was getting ready to go in” and “that’s when”
they saw, on the passenger seat, a clear plastic bag, containing a white substance,
sticking out of a brown paper bag. Walker concluded that the white substance, based
on its smell and his experience, was cocaine. Walker then arrested appellant and
drove him back to the house at 1523 Hendrix. It was later determined that the plastic
bag contained approximately one-half of a kilogram (500 grams) of cocaine.
           When they returned to the house, police officers asked appellant if anyone was
in the house, and he told them that his younger sister was babysitting his two
daughters. When the officers asked appellant for his permission to search the house, 
appellant refused. Houston Police Sergeant W. Rios then asked appellant’s sister for
permission to go inside the house, and she agreed.


 The officers then entered the
house to conduct a “security sweep,” and, when they opened a door to appellant’s 
office, they saw cocaine on a desk. Sergeant Rios testified that the officers did not
touch or take any evidence inside the house during this initial “security sweep.” Rios
further testified that he did not possess any information that there was anyone else in
the residence or that someone was destroying evidence or contraband. The officers
subsequently obtained a search warrant for the residence, performed a more extensive
search, and found 815.3 grams of powder cocaine and 93 grams of crack cocaine.
          Appellant filed three separate motions to suppress the evidence seized during
(1) the warrantless stop and search of appellant’s car, (2) the initial warrantless entry
and search of his residence, and (3) the subsequent search, conducted pursuant to a
search warrant, of his residence. After a suppression hearing, the trial court overruled
all three motions. Subsequently, appellant filed a motion to reconsider the denial of
the motions, which, after hearing additional evidence, the trial court denied. With the
trial court’s permission to appeal its ruling, appellant then pleaded guilty to the
offense.Standard of Review
          A trial court’s ruling on a motion to suppress evidence will not be set aside
unless there is an abuse of discretion. Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Spight v State, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st
Dist.] 2002, no pet.). We will afford almost total deference to a trial court’s
determination of facts supported by the record, especially when the findings are based
on the evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). Here, the trial court did not make explicit findings of
historical fact; we, therefore, review the evidence in the light most favorable to the
trial court’s ruling. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App.
2000). We assume the trial court made implied findings of fact supported in the
record that buttress its conclusion. Id. Because we do not determine credibility, our
de novo review of reasonable suspicion, probable cause, consent, and mixed
questions of law and facts becomes a de novo review of legal questions. Spight, 76
S.W.3d at 765.
          The United States and Texas Constitutions provide that people have the right
to be secure in their persons, houses, papers, and effects, from all unreasonable
seizures or searches. U.S. Const. amend IV.; Tex. Const. art. I, § 9. We note at the
outset that the United States Supreme Court has long held that the “touchstone of the
Fourth Amendment is reasonableness.” Ohio v. Robinette, 519 U.S. 33, 39, 117 S.
Ct. 417, 421 (1996) (emphasis added). Reasonableness is measured in objective
terms by examining the totality of the circumstances. Id. We steer clear of “bright-line rules” in applying this test because of the “endless variations in the facts and
circumstances” implicating the Fourth Amendment. Id.
Investigative Detention
          In issues one, two, and three, appellant contends that the trial court erred in
denying his motion to suppress evidence seized from his car because the warrantless
stop of appellant and Officer Walker’s subsequent entry into the car violated the
Fourth Amendment and article I, section 9 of the Texas Constitution. 
The Stop
          Appellant initially argues that “the removal of appellant from his [car] was an
arrest not supported by probable cause.” He asserts that he was illegally “arrested” 
and that the cocaine seized from his car was the fruit of an illegal arrest. 
          In support of his argument that he was “arrested” without probable cause,
appellant notes that an arrest is complete at the moment a person’s freedom of
movement is restricted or restrained. See Chambers v. State, 866 S.W.2d 9, 19 (Tex.
Crim. App. 1993). He also notes that an arrest may be achieved by a suspect’s
submission to an officer’s authority. See Medford v. State, 13 S.W.3d 769, 773 (Tex.
Crim. App. 2000). While conceding that there was “conflicting evidence,” appellant 
argues that if he was “handcuffed” prior to the seizure of cocaine from his car, “there
would be no question that appellant had been arrested.” He also argues that the
absence of handcuffs “does not preclude a finding that he was arrested when ordered
out of his car,” that he, in effect, was detained indefinitely, and the officers conducted
no investigation. 
          In Rhodes v. State, the Texas Court of Criminal Appeals held that peace
officers may use such force as is reasonably necessary to effect the goal of a stop,
including investigation, maintenance of the status quo, or officer safety. 945 S.W.2d
115, 117 (Tex. Crim. App. 1997). In Rhodes, the Court rejected a “bright-line test”
that mere handcuffing is always the equivalent of an arrest. Id. at 118. Rather, it
noted that “common sense and ordinary human experience must govern over rigid
criteria” in evaluating the reasonableness of an investigative detention. Id. The Court
explained: 
 “Reasonableness” must be judged from the perspective of a reasonable
officer at the scene, rather than with the advantage of hindsight. 
Furthermore, allowances must be made for the fact that officers must
often make quick decisions under tense, uncertain and rapidly changing
circumstances. 

Id. The Court concluded that the officer made a “temporary investigative detention”
of the defendant that was “reasonable and justified under the circumstances
surrounding the detention.” Id. 
          Moreover, it is well-settled that it is not unreasonable for a peace officer to
“order” an individual out of a car during a justified traffic stop. Pennsylvania v.
Mimms, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977). The Supreme Court has
described such an intrusion as “de minimis,” and a “mere inconvenience.” Id. 
          Here, Officer Green had purchased a kilogram of cocaine from Gonzales in the
black Lexus immediately after Garza went to retrieve it from 1523 Hendrix. 
Immediately after the purchase, Officers Walker and Davis saw appellant leaving
1523 Hendrix in his car. After stopping and approaching appellant, Walker identified
himself as a police officer and told appellant that “he could contact a lawyer, but at
that point he was going to be detained until the other officers could arrive to try and
get a search warrant for the house.” (emphasis added). A peace officer’s testimony
is one factor to consider, along with other facts and circumstances, in determining
whether an arrest has taken place. Id. at 117. After the officers asked for consent to
search the car, appellant told the officers that he wanted to talk with his attorney and
he terminated the conversation. Moreover, as conceded by appellant, the record
supports a finding that the officers did not handcuff appellant.
          We hold that the officers’ actions under these circumstances did not amount to
an “arrest,” were reasonable to effect a temporary investigative detention, and did not
violate the Fourth Amendment or article I, section 9 of the Texas Constitution. We
further hold that the trial court did not err in denying appellant’s motion to suppress
evidence seized from his car on the grounds that he was “arrested” without probable
cause.
 

Reasonable Suspicion
          Appellant next argues that any “detention of [him] was not based on reasonable
suspicion” because the police officers “possessed no information from any source
with personal knowledge that cocaine had been picked up from 1523 Hendrix, or that
additional cocaine was being stored in the house.” Appellant asserts that neither
Officer Walker nor Officer Davis articulated specific facts to connect either appellant
or his car to any criminal activity. 
          Circumstances short of probable cause may justify a temporary investigative
detention. Terry v. Ohio, 392 U.S. 1, 15, 88 S. Ct. 1868, 1877 (1968);


 Stone v. State,
703 S.W.2d 652, 654 (Tex. Crim. App. 1986). A peace officer may make a temporary
investigative detention of an individual if the officer has a reasonable suspicion that
some activity out of the ordinary is or has occurred, some suggestion to connect the
detainee with the unusual activity, and some indication that the activity is related to
a crime. Stone, 703 S.W.2d at 654. The test for reasonable suspicion is a factual one
and is made and reviewed by considering the totality of the circumstances at the time
of the stop. Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). 
Furthermore, when several officers are cooperating, their cumulative information is
to be considered in determining whether reasonable suspicion exists at the time of the
stop. Hoag v. State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).
          This Court has previously held that an officer had “sufficient reasonable
suspicion to justify an investigatory stop” of an individual as she drove away from a
house believed to contain marihuana. Sandoval v. State, 860 S.W.2d 255, 258 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). 
          In Sandoval, police officers obtained information from an informant, who had
been arrested for possession of 100 pounds of marihuana, that he purchased the
marihuana at a residence one day prior to his arrest. Id. at 256. The informant told
the officers that, when he purchased his marihuana, he saw another 200 pounds of
marihuana in the garage of the residence. Id. Based on this information, officers
sought to obtain a warrant to search the residence. Id. While one officer was
procuring the search warrant, another officer kept the residence under surveillance
and saw the defendant drive a pickup truck away from the residence. Id. After
another officer stopped the defendant, she admitted that she had marihuana in the
truck, and she was placed under arrest. Id. at 256-57. We noted that “the question”
before us was “whether the officers conducting surveillance of the house had
reasonable suspicion to stop” the defendant. Id. at 257. We held that the stop and
temporary detention of the defendant was a “reasonable investigative detention.” Id.
at 258.
          Appellant emphasizes that, “[u]nlike in Sandoval, where [narcotics] had been
personally observed inside the residence, no such observation had been made in the
instant case. Any belief that [appellant’s] black Corvette was transporting drugs was
the result of an inarticulable hunch.”
          Here, Officer Green testified that, as Garza drove away from the restaurant in
the black Lexus, Green asked Garcia, “[w]hat’s up with your car?” Garcia told Green
that “[Garza] was going to get [the cocaine].” Officers Walker and Davis followed
the black Lexus to 1523 Hendrix. Garza stayed at the residence for approximately
five minutes and then drove the black Lexus directly back to the restaurant. When
Garza returned to the restaurant, he spoke in Spanish to Garcia and gave him the car 
keys. After Garcia and Green entered the black Lexus, Garcia indicated that there
was a kilogram of cocaine under the floor mat beneath Green’s feet. Within five to
15 minutes of learning that cocaine had been found in the Lexus, Officers Walker and
Davis saw appellant backing his car out of the driveway at 1523 Hendrix. 
          Although no one actually saw cocaine in the house, and no one actually saw
Garza enter or exit the house, the officers had reason to suspect that Garza had
retrieved the cocaine from 1523 Hendrix. Moreover, given the short lapse of time
between Garza’s retrieval and ultimate delivery of cocaine to Garcia and the time that
appellant was seen leaving the house, the officers had reason to suspect that appellant
was connected with the narcotics activity of Garcia and Garza. At the very least, the
officers had reason to suspect that appellant was an occupant of the house and that
the house harbored narcotics.
          Accordingly, we hold that the stop and temporary detention of appellant was
a reasonable investigative detention and did not violate the Fourth Amendment or
article I, section 9 of the Texas Constitution. We further hold that the trial court did
not err in denying appellant’s motion to suppress evidence seized from his car on the
grounds that his detention was not based upon reasonable suspicion.
Scope of the Detention
          Appellant further argues that if the stop was a temporary detention, Officer
Walker’s entry into appellant’s car and the seizure of cocaine from his car “exceeded
the scope” of the initial detention. Appellant asserts that the officers had no intention
of conducting an investigation and that after he refused to consent to the search of his
car, he “should have been released to go about his business.” 
          An investigative detention must be temporary and last no longer than is
necessary to effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491,
500, 103 S. Ct. 1319, 1325 (1983); Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim.
App. 1997). Once the reason for the detention has been satisfied, the detention may
not be used as a “fishing expedition for unrelated criminal activity.” Davis, 947
S.W.2d at 243. An investigative detention “must be strictly circumscribed by the
exigencies which justify its initiation.” Terry, 392 U.S. at 25-26, 88 S. Ct. at 1882.
          Appellant relies on Davis in support of his argument that when the officers
“found nothing to confirm their suspicion” that he was engaged in criminal activity,
“he should have been released to go about his business.” In Davis, police officers
effected a traffic stop of Davis for suspicion of driving while intoxicated. 947
S.W.2d at 241. During the initial detention, the officers did not detect an order of
alcohol on Davis and determined that he was not intoxicated. Id. They further did
not detect an odor of alcohol or any type of drug coming from the car. Id. The
officers questioned Davis and his passenger and ran a computer check. Id. Although
they determined that Davis’s driver’s license was valid, the officers did not believe
his statement that he was “on a business trip.” Id. The officers asked Davis for
permission to search his car, but Davis refused to give consent. Id. After performing
a pat-down search of Davis, the officers told him that he was free to leave, but his car
was “being detained for an on-scene investigation.” Id. A canine unit was called to
the scene and a dog made a positive alert at the trunk of Davis’s car. Id. The officers
recovered a suitcase containing marihuana. Id.
          The Texas Court of Criminal Appeals stated that the purpose of the
investigative detention was effectuated when the officers determined that Davis was
not intoxicated and, as determined by the officers when they told Davis he was free
to leave, no known fact, or rational inferences from those facts, supported a
conclusion that Davis was engaged in or soon would engage in criminal activity. Id.
at 245. It noted that “even though the officers stated [Davis] was free to leave, he was
effectively restrained.” Id. at 246. In detaining Davis’s car, “the officers were
effectively depriving [Davis] of his liberty interest of proceeding with his itinerary.”
Id. Thus, in Davis, the Court determined that the court of appeals erred in holding the
continued detention of the vehicle was reasonable, reversed the decision, and
remanded the case to the trial court. Id.
          Here, in contrast, as we have noted above, Officers Walker and Davis had
reason to suspect that appellant was connected with the narcotics activity of Garcia
and Garza. In the present case, the purpose of the stop was to identify appellant and
to temporarily detain him until a search warrant could be obtained for the house at
1523 Hendrix. Even after appellant refused to consent to a search of his car and
requested to speak with his lawyer, the officers still had reason to suspect that he was
an occupant of a house suspected of harboring narcotics. The Supreme Court has
held that peace officers may temporarily detain an occupant of a house while they
wait for a search warrant. See Illinois v. McArthur, 531 U.S. 326, 333, 121 S. Ct.
946, 951 (2001) (holding that preventing a man from entering his home without
officers accompanying him while waiting for a search warrant did not violate the
Fourth Amendment as it was a reasonable seizure under the totality of circumstances);
Michigan v. Summers, 452 U.S. 692, 702-05, 101 S. Ct. 2587, 2594-95 (1981) (a
temporary detention of a suspect without an arrest warrant is allowed to prevent flight
and protect officers while executing a search warrant).
          The purpose of the investigative detention of appellant was not effectuated at
the time that he refused to consent to a search of his car. We hold that the officers’
actions under these circumstances were reasonable, did not exceed the scope of their
lawful detention of appellant, and did not violate the Fourth Amendment or article I,
section 9 of the Texas Constitution. We further hold that the trial court did not err in
denying appellant’s motion to suppress evidence seized from his car on the grounds
that the actions of the officers “exceed the scope” of any lawful detention.
Entry of Appellant’s Car
          Appellant next contends that Officer Walker’s entry of his car, “based on the
pretext of having to move the [car], amounted to its seizure by law enforcement.” He
asserts that this “seizure” was neither authorized by warrant nor based upon probable
cause or his consent. Appellant argues that “no lawful reason existed to enter the car”
and “any suggestion that blocking of traffic created an exigent circumstance [fails].”
          Appellant’s argument is wholly based upon the testimony of Officer Walker,
during the hearing on appellant’s motions to suppress evidence, that he saw the
plastic bag containing cocaine when he “entered the car.” However, during the
hearing on appellant’s motion to reconsider the denial of his motions to suppress
evidence, Officer Davis testified that “[w]hen Officer Walker got ready to get in the
car, I was still on the passenger side, and we both just happened to kind of look in the
car at the same time as he was getting ready to go in, and just happened to look on the
passenger seat. And that’s when we noticed it, right then.” What the officers noticed
was “a bag and a substance which later proved to be cocaine, kind of hanging out of
the bag.” 
          Here, the record supports an implied finding by the trial court that the officers
saw, in plain view, the clear plastic bag containing cocaine before Office Walker
entered appellant’s car. Moreover, Officer Walker testified that, based on its smell
and his experience, he recognized that the substance in the plastic bag was cocaine. 
An officer may seize items in plain view if (1) he has a right to be where he is when
he sees the item and (2) he immediately recognizes the item as evidence. Ramos v.
State, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996). Accordingly, we hold that
Officer Walker’s seizure of cocaine from appellant’s car did not violate the Fourth
Amendment or article I, section 9 of the Texas Constitution. We further hold that the
trial court did not err in denying appellant’s motion to suppress evidence seized from
his car on the grounds that Officer Walker unlawfully entered appellant’s car.           We overrule issues one, two, and three.
Remaining Issues
          Appellant pleaded guilty to the felony offense of possession with intent to
deliver cocaine weighing at least 400 grams. Tex. Health & Safety Code Ann. §
481.112(a), (f) (Vernon 2003). Such an offense is punishable by imprisonment for
life or for a term of not more than 99 years or less than 15 years and a fine not to
exceed $250,000. Id. 
          As noted above, the cocaine seized from appellant’s car weighed approximately
500 grams. This evidence, standing alone and independent from the evidence seized
from appellant’s residence, was sufficient to establish his guilt. Having held that the
trial court did not err in overruling appellant’s motion to suppress evidence seized
from his car, we need not address appellant’s remaining issues, four through 12, that
the trial court erred in denying his motions to suppress evidence seized from his
residence. 
 

Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Hedges, Jennings, and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).