**Andre Bernard BROOKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–91–00909–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 28, 1992.

**818**

---

Stephen E. Garner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Julie Klibert, Don Crosier, Asst. Attys., for appellee.

Before DUGGAN, COHEN and PRICE,[1] JJ.

## OPINION

PRICE, Justice (Assigned).

On October 7, 1991, after the trial court denied his motion to suppress, appellant pled no contest and was found guilty of

---

**1.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

unauthorized use of a motor vehicle. Punishment, once enhanced, was assessed at eight years confinement. Appellant gave timely written notice of appeal. In two points of error, appellant challenges the denial of the motion to suppress and the legality of his conviction based upon evidence obtained by virtue of an illegal detention and search.

At 2:49 a.m. on February 22, 1991, Officer Nasworthy was responding to a burglary-in-progress call at 9898 Club Creek when she noticed a red Mustang parked in a driveway in the area of the reported burglary with its lights on. She became suspicious of the car because it was in the vicinity and, as she approached, the car drove off. She followed the car to the exit of the apartment complex where she saw another patrol unit that was also responding to the call. She contacted the second unit by radio and instructed those officers to stop the car when it came out. Then she returned to check out the reported burglary. At 2:59, after learning that there was no burglary, she cleared the call. Then she went to where the Mustang had been stopped and was told that the appellant was being arrested for outstanding traffic warrants.

Officer Salcido testified that he and his partner, Officer Medino, were responding to the burglary-in-progress call when Officer Nasworthy instructed them to stop the car leaving the apartment complex. Al-though he could not remember Nasworthy's exact instructions, he stated that he stopped appellant, "to just find out whether or why he was leaving the scene or if he had any evidence of a break-in, if at all." [2] Salcido agreed that there was no indication that appellant was involved in any criminal activity other than the fact that "the vehicle was seen leaving the scene of a burglary in progress." He further confirmed that appellant committed no felony or breach of the peace in his presence, committed no traffic offense, and made no attempt to escape.

Salcido asked appellant for his driver's license and proof of insurance. Appellant produced a valid driver's license. While the officers waited to hear the results of Nasworthy's investigation of the burglary, Salcido checked appellant's license on the computer. When the computer indicated that appellant had outstanding D.P.S. warrants, Salcido placed him in custody. At 2:59 a.m. Nasworthy informed Salcido that there was no burglary and none had been attempted.

Salcido stated that before the computer check revealed the outstanding warrants, appellant had been allowed to remain in his car and no search had been conducted. However, Salcido did take appellant's license with him when he went to his patrol car to access the computer. After the warrants were confirmed and Salcido had arrested the appellant, he decided to have the

---

**2.** Officer Salcido's exact testimony regarding the nature of the stop was as follows:

Q. But at the time you stopped Mr. Brooks and asked for his license he had broken no law; is that correct?
A. That's correct.
Q. But you still continued to detain him waiting for the computer check, right?
A. Yes.
Q. To see if he had any outstanding warrants.
A. On his driver's license, yes.
Q. Wasn't that sort of a fishing expedition, Officer?
A. Not really. We do that all the time when we stop somebody on traffic. It's automatic.
Q. So this was a routine driver's license check?
A. Yes.

Q. OK. You mean when you make a routine driver's license check and the person produces a license, you still go ahead and run it?
A. Yes.
Q. Was it your purpose in stopping him to determine whether he had a driver's license?
A. No, it was not.
Q. I'm sorry. I thought you said it was a routine driver's license check.
A. Well, I thought we had already established why we stopped him in the first place; but, it is automatic once we get them stopped to run their driver's license.
Q. I am just trying to figure out why you stopped him.
A. Because Officer Nasworthy advised us that that car, his car that he was driving, was leaving the scene of a burglary in progress.
Q. But that's consistent with innocent activity, isn't it?
A. Sure.

car towed because the only passenger in the car did not have a driver's license. When the passenger objected to the idea of towing the car, Salcido allowed him to go get a friend who lived in the complex to drive the car. However, the passenger returned to report that the friend did not have a driver's license either. Therefore, it became necessary to tow the car. In the process of filling out the tow slip after the wrecker arrived, the officer checked the vehicle identification number and discovered the car was stolen.

Appellant testified that he had dropped his girlfriend off at her apartment and was getting back in his car to leave when he saw a police car drive up slowly with no lights. At the exit gate, he saw another police car that turned and followed him. After two and a half blocks, the second police car stopped him. The officer asked for his driver's license and insurance. Appellant produced the license. Then the officer asked him what he was doing "over there." Appellant answered that he had dropped off his girlfriend. The officer then took appellant's license and walked back to his patrol car without saying anything further.[3] Appellant did not feel free to leave. He thought 20–30 minutes passed before the officer returned, told him about the outstanding warrants, and placed him under arrest.

In two points of error, appellant complains that the trial court erred in denying his motion to suppress evidence obtained through an illegal detention, search and seizure and in basing his conviction on the illegally obtained evidence.

 The trial court is the sole trier of fact in a suppression hearing, and we are not at liberty to disturb any finding that is supported by the record. *Burkett v. State*, 760 S.W.2d 345, 346 (Tex.App.—Houston [1st Dist.] 1988, no pet.). In reviewing the trial court's ruling on a motion to suppress, the appellate court must view the evidence in a light most favorable to the trial court's ruling. The ruling will not be reversed

absent a showing of an abuse of discretion. *Bodin v. State*, 782 S.W.2d 258, 259 (Tex. App.—Houston [14th Dist.] 1989), *rev. on other grounds*, 807 S.W.2d 313 (1991).

In order for an investigatory stop to be legal, there must be some indication or reasonable inference of criminal conduct. *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim.App.1989). The relevant inquiry is not whether the particular conduct is innocent or guilty, but rather the degree of suspicion that attaches to particular noncriminal acts. *Holladay v. State*, 805 S.W.2d 464, 473 (Tex.Crim.App.1991) (citing *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). A police officer may briefly stop a suspicious person in order to determine his identity or to momentarily maintain the status quo while obtaining more information. *Mays v. State*, 726 S.W.2d 937, 944 (Tex.Crim.App.1986), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988). Circumstances may justify temporary detention for the purpose of investigation. *Sewell v. State*, 797 S.W.2d 376, 378 (Tex.App.—Corpus Christi 1990, no pet.).

Such circumstances as will raise suspicion that illegal conduct is taking place need not be criminal in themselves. Rather, they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be. *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991) (citing *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). However, the evidence must be more than merely relevant; it must be of sufficient probative strength to support a reasonable suspicion of criminal misconduct. *Crockett*, 803 S.W.2d at 311; *Brem v. State*, 571 S.W.2d 314, 318 (Tex. Crim.App.1978). At a minimum, the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively set the suspect apart from them. *Brown v. Texas*, 443 U.S. 47, 52, 99

---

**3.** Appellant specifically stated that the officer never asked him whether he had seen anything suspicious going on over at the apartment project. Neither did the officer explain his action in keeping appellant's license.

S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *Crockett*, 803 S.W.2d at 311.

In order to justify a temporary detention, the officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for investigation. *Gillum v. State*, 788 S.W.2d 443, 445 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). The officer must have a reasonable suspicion, based on articulable facts, that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with unusual activity, and some indication that the activity is related to a crime. *Hoag v. State*, 728 S.W.2d 375, 379–80 (Tex.Crim.App.1987); *Kelly v. State*, 721 S.W.2d 586, 587 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

Officer Nasworthy testified that by the time the police arrive at the scene of most burglary in progress calls, the suspects are already gone. Many times the police pass the suspects, who are leaving as the police arrive. Therefore, it is customary to stop and investigate anyone leaving the immediate area of a burglary in progress. Therefore, the stop was not illegal. The trial court did not abuse its discretion in overruling appellant's motion to suppress.

We further recognize that even in a situation involving an *illegal* detention, where a valid warrant for the appellant's arrest is discovered, and the appellant is arrested under the authority of that warrant, evidence found during a subsequent inventory search pursuant to the arrest is admissible into evidence against the appellant. *Johnson v. State*, 496 S.W.2d 72, 74 (Tex.Crim.App.1973); *Reed v. State*, 809 S.W.2d 940, 945 (Tex.App.—Dallas 1991, no pet.). Therefore, even if appellant's stop were illegal, the evidence having been obtained pursuant to an arrest under a valid outstanding warrant was admissible against him.

Accordingly, we affirm the trial court's judgment.