**Grace Marie SANDOVAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–92–00749–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 12, 1993.

Ken J. McLean, Houston, for appellant.

Kathy Holton, Fred Felcman, Richmond, for appellee.

Before OLIVER–PARROTT, C.J., and DUNN and HEDGES, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a conviction for aggravated possession of marijuana. Appellant entered a plea of guilty. Upon the recommendation of the State, the agreement of appellant and counsel, the trial court assessed a penalty of a $5,000 fine, and five-years confinement, probated for five years, and 200 hours of community service.

Appellant filed a motion to suppress evidence with the trial court on March 3, 1992, directed at marijuana seized by law enforcement officers from appellant's vehicle and to suppress oral and written statements made by appellant. The trial court heard evidence on appellant's motion and signed an order denying appellant's motion to suppress. This ruling is the focus of appellant's four points of error in her brief on appeal.

On October 22, 1991, Officer J.T. Dugger of the Houston Police Department narcotics squad and other officers executed a search warrant at a residence at 518 Bull Lane. Officer Dugger testified that at that time the officers seized approximately 100 pounds of marijuana and arrested Enoe Orlando Sandoval. Officer Dugger further testified that when questioned by the officers, Orlando Sandoval told them he obtained the marijuana the day before from his cousin, Ruben

Sandoval, who lived at 1818 Green Star Drive, Missouri City. According to Dugger's testimony, Enoe Orlando Sandoval stated that on the previous day, when he picked up the marijuana, he saw 200 pounds of marijuana in the garage of the 1818 Green Star house. Dugger testified that Orlando Sandoval then rode with him and Sergeant Crocker, also of HPD narcotics, to 1818 Green Star and indicated which house was his cousin's. Appellant is Ruben's wife and also resides at 1818 Green Star.

Sergeant Crocker began a surveillance of the residence and remained as Officer Dugger took Orlando Sandoval to the police station to obtain a warrant to search the premises at 1818 Green Star and arrest Ruben Sandoval. At that time, no vehicles were observed by the officers and the garage doors were closed.

Dugger testified that around 10:00 or 10:30 p.m., Sergeant Crocker informed him by radio that a blue and white pickup truck was driving away from the house at 1818 Green Star. The truck was being driven by appellant. At that time, Officer R.J. Smiley was notified by radio by Sergeant Crocker to stop the truck. Sergeant Crocker was following directly behind the truck in an unmarked car. As the truck passed Officer Smiley, he pulled behind it and turned on his sirens to stop it. Officer Smiley testified that appellant did not stop, and continued driving, turned into a Kroger's parking lot and accelerated and started to make U-turn "as if to drive off one of the other exits." Officer Smiley was able to bring appellant's truck to a stop after cutting across its path with his patrol car. Officer Smiley testified he then approached the truck and had appellant step out and placed her in custody. Officer Smiley also removed two small children from the truck, and after doing so he noticed a strong odor of marijuana coming from the truck, and several trash bags behind the front seat.

Shortly after appellant was stopped, Officer Dugger arrived. He testified that he also noticed the smell of marijuana in appellant's truck. When he asked appellant if she had marijuana in the truck, appellant replied that she did. Officer Dugger read appellant

her rights, arrested her, and searched the truck. The search revealed 113 pounds of marijuana, $3,900 cash, and a set of scales, all of which were seized by the officers.

The information that Officer Dugger had received from Enoe Orlando Sandoval, and the search and seizure of evidence in appellant's truck were all included in an affidavit submitted by Officer Dugger for a warrant to search the 1818 Green Star residence and arrest Ruben Sandoval.

After the warrant was executed on appellant's residence, Officer Dugger testified that he took a statement from appellant, after again reading her rights to her. In her statement, appellant stated she was aware marijuana was in the bags, and had placed it in the truck to drive away from her residence after receiving a telephone call informing her that Orlando Sandoval had been arrested.

■ In a motion to suppress hearing, the trial judge is the sole trier of fact, and he may choose to believe or disbelieve any or all of the witnesses' testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Absent a clear abuse of discretion by the trial court, the ruling on the admissibility of evidence will not be disturbed. *Rivera v. State*, 808 S.W.2d 80, 96 (Tex.Crim.App. 1991); *Townsend*, 813 S.W.2d 181, 184 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). On review, we must view the evidence in the light most favorable to the trial court's ruling. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ The question for this Court, and the issue addressed by appellant in a portion of her fourth point of error, is whether the officers conducting surveillance of the house had reasonable suspicion to stop appellant when she left the house, and upon doing so, whether probable cause developed to allow them to search her vehicle and seize items found inside.

Appellant claims the stop and search of her truck were unlawful, since there was no evidence to connect her truck to any criminal activity. However, appellant argues that no suspicion could have been manifested against her "since she was not mentioned in the warrant or warrant affidavit." Appellant's argument ignores the fact that she was not stopped and searched pursuant to a warrant.

The State asserts that the officers had "reasonable suspicion" to make an investigatory stop.[1] It was not one officer who received information that drugs were present at appellant's house, maintained surveillance, stopped her, and searched her truck. The courts have noted that when several officers are cooperating, their cumulative information is to be considered in determining whether reasonable suspicion exists at the time of the stop. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App.1987).

■ The police may briefly stop a suspicious person to determine his identity or maintain the status quo while obtaining more information. *Mays v. State*, 726 S.W.2d 937, 944 (Tex.Crim.App.1986). There are circumstances short of probable cause that justify temporary detention for purposes of investigation because an investigation is less intrusive upon personal security. *Milton v. State*, 549 S.W.2d 190, 193 (Tex.Crim.App.1977); *Hawkins v. State*, 853 S.W.2d 598, 601 (Tex. App.—Amarillo 1993, no pet.). To support

---

1. Officer Duggar's exact testimony regarding the nature of the stop was as follows:

Q. All right. Was she stopped from what you know because you and the others thought she might be carrying marihuana in the pickup truck?
A. That's correct.
Q. Okay. And, again, there are no statements about any vehicles in this warrant owned by the Sandovals?
A. No.
Q. Okay. And so based on the fact that you, Sergeant Crocker, and maybe others believed she was carrying marijuana, she was stopped; is that fair?

A. That's fair.
Q. All right. And so are you telling the Court that any vehicle that had been parked at that residence and left on or about that time would have been stopped?
A. That's correct.
....
Q. Based on the information you had in your possession from Orlando Sandoval did you believe you had enough reasonable suspicion to stop any vehicle that left [the] place?
A. That's correct.
Q. Had you been given information that there was in fact contraband in that residence?
A. That's correct.

such an investigative stop, an officer must have specific articulable facts, which in light of his experience and general knowledge, taken together with rational inferences from those facts, would reasonably warrant the intrusion. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Ramirez v. State,* 672 S.W.2d 480, 482 (Tex. Crim.App.1984). The test for "reasonable suspicion" requires consideration of the totality of the circumstances confronting the police. *Gurrola v. State,* 852 S.W.2d 651, 653 (Tex.App.—Houston [14th Dist.] 1993, no pet.); *Williams v. State,* 839 S.W.2d 469, 471 (Tex.App.—Corpus Christi 1992, pet. ref'd). The conduct relied upon by the officer must at a minimum be sufficiently distinguishable from an innocent person's under similar circumstances as to clearly, if not conclusively, set the person apart. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991) (citing *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979).

Under circumstances similar to this case, this Court has held an officer had sufficient reasonable suspicion to justify an investigatory stop. In *Brooks v. State,* 830 S.W.2d 817, 821 (Tex.App.—Houston [1st Dist.] 1992, no pet.), we held that the stop of the defendant's car was legal.[2] In *Brooks,* an officer responding to a burglary-in-progress call became suspicious of a car parked in the area, which pulled off when she approached. The officer followed the car and radioed ahead to a second unit and instructed them to stop the car, while she returned to check on the reported burglary. The second officer testified that he stopped the appellant, "to just find out whether or why he was leaving the scene

or if he had any evidence of a break-in, if at all." He further testified that the appellant committed no felony or breach of peace, traffic offenses, and made no attempt to escape in his presence. We held that it was "customary to stop and investigate anyone leaving the immediate area of a burglary in progress." *Id.* at 821.

Furthermore, in *Mottley v. State,* 841 S.W.2d 550, 551 (Tex.App.—Houston [1st Dist.] 1992, no pet.), we stated that "[an] appellant's presence on the premises was a specific and articulable fact which gave rise to a rational inference that appellant was an occupant of the premises, and sufficed to permit the police officers to detain appellant briefly to ascertain whether appellant was indeed an occupant of the premises." *Id.* at 551 (citing *Michigan v. Summers,* 452 U.S. 692, 693, 101 S.Ct. 2587, 2589, 69 L.Ed.2d 340 (1981).

Applying the facts to the law, we hold that the stop and temporary detention of appellant was a reasonable investigative detention. First, the police were taken to the residence by Enoe Orlando Sandoval (a cousin), who told them that he had purchased 100 pounds of marijuana the day before at the house. Second, Enoe Orlando told the police that he saw 200 pounds of marijuana in the garage. Third, the police had the house under surveillance when around 10:00 or 10:30 p.m. a pickup truck pulled out of the closed garage area where the marijuana was suppose to be located. Fourth, the police did not know the identity of the driver, whether it was appellant, her husband, a friend of the couple, or somebody else, who was leaving the garage.[3] Officer Dugger testified that he observed a

---

**2.** The Court also recognized that even if the detention was illegal, evidence obtained pursuant to an arrest under a valid outstanding warrant was admissible. *Brooks,* 830 S.W.2d at 821.

**3.** Officer R.J. Smiley testified to the stopping of the truck as follows:

> Q. Okay. And how were you in contact with this [Houston police] officer?
> A. I was provided one of his, one of the Houston's [police department] radios at the shift change. I was advised that they were working on a narcotics case, and that they may

need assistance in stopping a vehicle, that they were all in unmarked units.
> Q. And what type of information did [the police officer] relay to you over the radio? Did he give you a specific description of the vehicle and license plates, etcetera?
> A. He gave me a description of the vehicle, and he was, at the time that he said he had the vehicle he was directly behind it. As the vehicle passed me, he told me, that's the vehicle passing me right now, and it was a white pickup truck.
> Q. All right. And then what did you do?
> A. I pulled in behind the truck and activated my emergency equipment to stop it.

"blue and white pickup leaving the location," and that the police "were going to stop any vehicle leaving that residence."

Law enforcement officers are not required to look the other way and permit a crime to occur or a criminal to escape. *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Milton*, 549 S.W.2d at 193. Here, the police had reasonable suspicion that the marijuana was being transported away from the residence by an unidentified person who was on the premises during the surveillance of the house. Temporarily detaining the suspect, while officers attempt to verify or dispel suspicions for the departure of the unidentified driver from the house is authorized. *See Florida v. Royer*, 460 U.S. 491, 503, 103 S.Ct. 1319, 1327, 75 L.Ed.2d 229 (1983); *Brooks*, 830 S.W.2d at 820–21.

Appellant cites this Court to *Leighton v. State*, 544 S.W.2d 394, 396 (Tex.Crim.App. 1976), where it was held that an officer who made an investigatory stop of a defendant's car and then saw marijuana in the car in plain view, lacked reasonable suspicion to stop the vehicle. In *Leighton*, the officer was acting on information from a citizen who believed a robbery had occurred, because he had seen people go into a house he was watching for absent owners. Upon inspection of the house, the officer found no signs of forced entry or anything missing from the house. As the defendant's car drove by, the citizen told the officer he *"thought* he had seen the car at the house earlier." The court in *Leighton* held this was not specific or articulable facts sufficient to justify the stop. However, the present case is distinguished because of the specific facts noted above.

■ Appellant also contests the legality of the search incident to the investigatory stop. Once appellant was stopped by the officer, he noticed a strong odor of marijuana coming from the truck. Other officers arrived shortly after and also smelled the odor of marijuana coming from the truck.

In *Isam v. State*, 582 S.W.2d 441, 444 (Tex.Crim.App.1979), the court held that where an officer smelled the odor of marijuana as he approached the vehicle, the arrest and search of the defendant were reasonable.

An officer executing a valid stop and detecting the odor of marijuana coming from the defendant's car was justified in his search of the car. *Duff v. State*, 546 S.W.2d 283, 286 (Tex.Crim.App.1977). In another case, an officer who detected the odor of marijuana coming from defendant's car after he observed what he believed was an unlit marijuana cigarette, and after the defendant voluntarily opened his trunk, had probable cause to search the defendant's vehicle. *Alcorta v. State*, 699 S.W.2d 605, 605 (Tex. App.—Waco 1985, no pet.).

It must be noted that even after detecting the odor of marijuana, officers at the scene did not search appellant's truck until they asked appellant if marijuana was in her truck and she replied "yes." In *U.S. v. Alvarado Garcia*, 781 F.2d 422, 427 (5th Cir.1986), border agents in Texas stopped a truck for investigatory purposes based on reasonable suspicion. When the driver responded to an officer's question regarding what he was hauling by admitting it was marijuana, the court held the officers had probable cause to arrest him, search the truck and seize the marijuana. *Alvarado Garcia*, 781 F.2d at 426–27. In that case, as in the instant case, the defendant admitted to an offense in the officer's presence. After her admission, the officers had sufficient probable cause to arrest appellant.

■ After appellant was read her rights and arrested, the officers then searched her car and seized the marijuana. Searches of a person and the area within his immediate control are excepted from the warrant requirement when incident to a lawful arrest and when otherwise proper in scope. *Rogers v. State*, 774 S.W.2d 247, 263–64 (Tex.Crim. App.1989). An officer may search a car incident to a valid arrest of a defendant who had been seated in the driver's seat. *Smith v. State*, 813 S.W.2d 599, 602 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *see U.S. v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (officer with probable cause to search vehicle may search without warrant, including all containers possibly concealing object of search).

In this case, the officer's search of appellant's truck and seizure of the evidence inside was justified, following their detection of the marijuana odor, and appellant's admission that the truck contained marijuana.

In her motion to suppress filed with the trial court, appellant sought to suppress the oral and written statements given by her to the officers, presumably at the scene and later at the station. Appellant makes no argument, nor does anything in the record reflect, that the statements were in any way coerced or involuntary. *Miranda v. Arizona*, 384 U.S. 436, 464–65, 86 S.Ct. 1602, 1622–23, 16 L.Ed.2d 694 (1966). The record reflects that appellant was given her "Miranda warnings" before being arrested, and again before she gave her statement to the officers at the station. The only argument appellant appears to make that the trial court erred in denying her motion to suppress with regard to her statements, is that they were made following the investigatory stop. She is presumably arguing for their exclusion as "poisonous fruit" of what she argues was an improper stop. Since we have determined that the stop was proper, appellant's statements were properly admitted into evidence by the trial court.

Appellant's fourth point of error is overruled.

In her first, second, and third points of error, appellant challenges the sufficiency of information used in or omitted from the affidavit by the officers seeking a warrant to search the premises of 1818 Green Star. In her fourth point of error, appellant argues that it was error for the trial court to admit evidence seized from appellant's truck "since the affidavit girding the warrant contained zero probable cause to maintain the stop, seizure of appellant, her vehicle and the subject matter of the indictment, viz marijuana."

There is no indication in the record that appellant was stopped and her vehicle searched and the items seized pursuant to any warrant. In fact, the record indicates that the warrant did not issue until after appellant had been arrested, since her arrest and the seizure of the evidence from her truck comprise part of the warrant affidavit.

Therefore, appellant's first three points of error addressing the sufficiency of information in the warrant affidavit and the validity of the warrant itself do not address the issue appellant complains of, namely, the admission of evidence seized by law enforcement officers from appellant's truck. This evidence was seized prior to the issuance of the warrant. Consequently, the issue of defects in the warrant or affidavit need not be addressed by this Court.

Appellant's first, second, and third points of error are overruled. The judgment of the trial court is affirmed.