

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00039-CR

_____

MICHAEL DEAN PERRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 36182-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Michael Dean Perry appeals his conviction of tampering with physical evidence. A jury found Perry guilty and assessed a sentence of twenty-five years; the trial court sentenced Perry accordingly. After reviewing the record, applicable law, and hearing oral argument, we affirm Perry's conviction. Specifically, we find that the trial court did not err in overruling Perry's motion to suppress evidence and that the evidence was legally and factually sufficient to support the jury's finding of Perry's guilt. We further find the State failed to prove that one of the enhancement allegations was a final conviction; therefore, we remand this case for a new punishment hearing. Our resolution of that point obviates any need to examine Perry's claim of ineffective assistance of counsel.

I. **Factual Background**

In August 2007, Longview police officer Lisa Chatterton responded to a call in a residential area; the caller reported a suspicious person. When Chatterton arrived, she found a woman holding a plastic table to keep Perry at bay. The woman also had a cordless telephone. Perry's clothing matched that of the suspicious person report. Chatterton separated the two. As the woman retired to her porch, she told Chatterton that Perry had "a dagger." Perry was found to have two knives on his person and two prescription pill bottles; both bottles had pills, and neither had Perry's name on the prescription. One of the pill bottle's contents was chemically analyzed and found to be a dangerous drug: Clonazepam. After talking to the woman with the plastic table, Chatterton arrested

2

Perry for aggravated assault. At the station, as Chatterton was booking him in, Perry leapt to his feet, reached across the table, grabbed one pill bottle, and consumed its contents. He was transported to a local hospital. He was later charged with and convicted of tampering with evidence. This appeal followed.

## II.     Motion to Suppress

Perry's first point of error complains of the trial court's failure to sustain his motion to suppress. Perry claims the arresting officer did not have a legal basis to arrest him, and, therefore, the arrest was illegal and any evidence obtained must be suppressed.

### A.     Review of a Motion to Suppress

The standard for reviewing a trial court's ruling on a motion to suppress evidence is abuse of discretion. *Long v. State*, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991). At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Brooks v. State*, 830 S.W.2d 817, 820 (Tex. App.—Houston [1st Dist.] 1992, no pet.). On appellate review, the evidence presented at the suppression hearing is viewed in the light most favorable to the trial court's ruling to determine whether the trial court abused its discretion in denying the motion to suppress. *Whitten v. State*, 828 S.W.2d 817, 820 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

There are three distinct categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Encounters occur when police officers approach an individual in public to ask questions. *Harper v. State*, 217 S.W.3d 672, 674 (Tex. App.—Amarillo 2007, no pet.). Encounters do not require any justification on the part of an officer. *Id*. Police officers "do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Perez*, 85 S.W.3d at 819.

An officer may briefly stop a suspicious individual in order to determine his or her identity or to maintain the status quo momentarily while obtaining more information. *Adams v. Williams*, 407 U.S. 143, 147 (1972); *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994). A police officer may lawfully conduct a temporary detention if there is reasonable suspicion to believe that the detained person is violating the law. Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. In making this determination, we consider the totality of the circumstances. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008).

4

An officer may arrest a suspect, without a warrant, if, "at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *See Amador v. State*, No. PD-0144-08, 2009 Tex. Crim. App. LEXIS 4, at *13–14 (Tex. Crim. App. Jan. 14, 2009) (i.e., probable cause) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer." A finding of probable cause requires "more than bare suspicion" but "less than . . . would justify . . . conviction." *Id.* at *14 (citations omitted).

## B.    Perry's Arrest

The State presented Chatterton's testimony, and at the suppression hearing, Perry introduced her police offense report for the incident. According to Chatterton's report, before she arrived at the scene, the "callsheet" was updated that the male subject had threatened a person and pulled a knife. Chatterton responded to a report of a suspicious person wearing a blue T-shirt and denim cut-offs. When Chatterton arrived at the reported location, she found a man matching that description engaged in an argument with a woman who was holding a plastic table and a cordless telephone. From the woman's posture and actions, Chatterton believed she was trying to keep the man at bay. Chatterton told the woman to return to her house so she could talk to the man, later identified as Perry, and determine what was happening. As she left, the woman told Chatterton that Perry had "a dagger."

5

Chatterton said she recognized Perry's name and made small talk with him, waiting for a backup officer to arrive. When another officer arrived, Chatterton asked Perry if he had a knife; he answered in the affirmative, and Chatterton told him to place it on the hood of her squad car. When asked if he had any other weapons, Perry produced a second knife; he also put a prescription pill bottle[1] on the hood of the car, along with the two knives. At this point, Chatterton said she told Perry he was being detained while she conducted her investigation. She handcuffed him and put him in the backseat of her squad car. At the time Perry was detained, Chatterton had information that a male matching his description had threatened the complainant and that Perry had two knives on his person. These were sufficient facts for Chatterton to reasonably suspect that Perry had engaged in criminal activity.

Chatterton then again spoke to the woman at the scene. She told Chatterton she had seen Perry walking in the neighborhood with a man the woman knew. That man left, and Perry continued to walk back and forth in front of the woman's house; he asked the woman where the other man had gone. The woman told Chatterton that she had told Perry he needed to leave; Perry then wielded a knife in what the woman called a "posting position." At that point, the woman told Chatterton, she picked up a plastic table and left the porch because Perry was entering her yard. The woman described the knife as having "little groove marks," or "serrated," and one of the knives found on

---

[1]A second pill bottle was found on Perry in the jail when he was being booked in.

Perry was serrated. Chatterton testified that, at that point, she decided to arrest Perry for aggravated assault based on his alleged threat to the female.

Chatterton's report further stated that the female had told Chatterton that Perry had threatened her, so she picked up a plastic table and told Perry not to come into her yard. At that time, Perry exhibited a knife and "posted it" in a stabbing position and told her,"I'm going to cut you bitch." Based on the totality of the information known to Chatterton at the time of the arrest, we find the facts and circumstances within her knowledge and of which she had reasonably trustworthy information were sufficient to warrant a prudent person's belief that Perry had committed an offense. The trial court did not err in denying the motion to suppress.

## III. Points Two and Three: Sufficiency of the Evidence

Perry next challenges the legal and factual sufficiency of the evidence to support his conviction.

### A. Standard of Review

The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). In examining evidentiary sufficiency, we examine the evidence in the light most favorable to the verdict. *Jackson*, 443 U.S. at 320; *Johnson*, 871 S.W.2d at 186. Evidentiary sufficiency is measured "by the elements of the offense as defined by the hypothetically correct jury charge for the case."

7

*Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 240.

In contrast to a legal sufficiency review, in a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). The *Malik* doctrine of applying a hypothetically correct jury charge applies to a review of factual sufficiency. *Wooley v. State*, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008).

### B. Hypothetically Correct Jury Charge Analysis

Perry's appellate complaint is that the State did not offer sufficient evidence to prove the substance Perry consumed was actually Seroquel; and because the State's indictment alleged that the evidence he concealed or destroyed was Seroquel, there was legally and factually insufficient evidence to support the conviction. The State's indictment charged Perry did

> knowing an offense had been committed, to-wit: possess a dangerous drug, intentionally or knowingly destroy and conceal a dangerous drug, to-wit: Seroquel, with intent to impair its verity as evidence in any subsequent investigation or official proceeding related to the offense.

8

Based on the Texas Penal Code,[2] the State needed to prove Perry: 1) had knowledge some offense had been committed; 2) altered/destroyed/concealed a thing (document or record are not alleged and are not applicable); 3) with intent to impair that thing's verity as evidence in an investigation related to the offense. *See* Tex. Penal Code Ann. § 37.09 (Vernon Supp. 2008). Perry claims that, since the State pled what specific piece of evidence had been destroyed or concealed, it had to prove what Perry concealed or destroyed was a dangerous drug; specifically, that it was Seroquel.[3]

We disagree. The hypothetically correct jury charge in this case would have charged the jury with finding whether Perry committed the above-enumerated elements. In *Mantooth v. State*, 269 S.W.3d 68 (Tex. App.—Texarkana 2008, no pet.), we analyzed the "hypothetically correct jury charge" when reviewing the sufficiency of the evidence:

> A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The "hypothetically correct" jury charge cannot "wholly re-write the

---

[2]A person commits an offense if he or she "knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense." Tex. Penal Code Ann. § 37.09(d) (Vernon Supp. 2008). Another method of committing this offense is premised on the defendant "knowing that an investigation . . . is pending or in progress." The State did not allege that manner of committing this offense.

[3]The jury, in deliberations, sent a note to the trial court asking, "If the presence of Serouqel [sic] was not evident, would the charge of physical evidence tampering still be in effect according to this indictment?"

indictment," but is not required to "track exactly all of the allegations in the indictment." *Gollihar*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001). If the essential elements of the offense are modified by the indictment, the modification must be included. *Id*. at 254. The hypothetically correct charge "need not incorporate allegations that give rise to immaterial variances." *Gollihar*, 46 S.W.3d at 256.

In *Curry*, the Texas Court of Criminal Appeals held that the "'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Because the phrase "by using and threatening to use deadly force namely, a firearm, on [the victim]" alleged a statutory alternative "manner or means," the court held the State was bound by the allegation in the indictment. *Id.* at 403–04. Judge Keller has succinctly summarized *Curry* as holding, "[w]hen a statute lists more than one method of committing an offense, and the indictment alleges some, but not all, of the statutorily listed methods, the State is limited to the methods alleged." *Fuller v. State*, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002) (Keller, P.J., concurring).

Stated succinctly, the hypothetically correct jury charge must include both 1) allegations that form an integral part of an essential element of the offense or allegations that are statutorily alternative manner and means, and 2) material variances.[4] *See Gollihar*, 46 S.W.3d at 256.

*Mantooth*, 269 S.W.3d at 74 (in *Mantooth*, we went on to hold that the hypothetically correct jury charge [defendant charged with failure to register as a sex offender; State cited incorrect statute subsection in alleging registration requirement] did not "have to contain the State's allegation that Mantooth had a duty to register under" the wrong subsection, that was listed in the indictment).

---

[4]To determine whether a variance is material, we inquire if the indictment, as written, informed the defendant of the charge against him or her sufficiently so the defendant could prepare an adequate defense; and whether he or she would then be subject to being prosecuted again for the same offense. *See Gollihar*, 46 S.W.3d at 257.

### 1.    Essential elements of the offense

Here, the first element of the statute mandates the State prove that the defendant's actions were taken "knowing that an offense has been committed." TEX. PENAL CODE ANN. § 37.09(d)(1). Specifically, it was alleged that Perry knew that he possessed a dangerous drug. One definition of "dangerous drug" is a drug that is required to be dispensed by prescription. TEX. HEALTH & SAFETY CODE ANN. § 483.001(2)(A) (Vernon Supp. 2008). The possession of a dangerous drug violates the law unless "the person obtains the drug from a pharmacist." TEX. HEALTH & SAFETY CODE ANN. § 483.041(a) (Vernon Supp. 2008).

The evidence showed that Chatterton had just finished speaking on the telephone to a narcotics officer about charging Perry with possession of dangerous drugs, in front of Perry, when he grabbed one of the bottles and consumed its contents. It is undisputed that Perry possessed two pill bottles dispensed by a pharmacist, neither of which were prescribed for him. The contents of one was examined by the laboratory chemist and found to contain a dangerous drug: Clonazepam. The bottles revealed that both drugs were prescribed for a Roni McKinney, not Perry. The evidence fully supports the jury's finding that Perry knew the offense of possession of a dangerous drug had been committed when he consumed the pills.

The third element that the State was required to prove was that Perry had the intent to impair its verity as evidence. Perry ate the contents of the second pill bottle; the evidence supports the jury's

11

finding of his intent to impair the use of the items in the bottle in a later investigation or proceeding related to his possession of a dangerous drug.

It is the second element of the statute that Perry argues has not been fulfilled. The second element requires the State to prove Perry destroyed or concealed a "thing with intent to impair its verity as evidence." In the indictment, the State described the item destroyed as "a dangerous drug, to wit: Seroquel." This case revolves around whether the State was required to prove that the drug destroyed was specifically Seroquel using the "hypothetically correct jury charge" test.

In former days, the reference to a "dangerous drug, to-wit: Seroquel" may have been considered as surplusage which the State was not required to prove, but now the surplusage doctrine has been subsumed in the hypothetically correct jury charge analysis. *See Gollihar*, 46 S.W.3d at 256; *Fuller v. State*, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002). Perry was charged with tampering with or fabricating physical evidence, not a drug violation. Therefore, the State was required to prove that, under these circumstances, Perry destroyed a thing with intent to impair its verity as evidence in any subsequent investigation or official proceeding related to the offense. TEX. PENAL CODE ANN. § 37.09(d)(2). The evidence showed that, while Perry was being processed in the police department, the two pill bottles taken from his possession were nearby when he consumed the contents of one of them. It takes no leap of deductive reasoning for a reasonable jury to conclude Perry was attempting to destroy whatever was in the pill bottle so that the evidence would not be available for use in the drug possession case. Whether the bottle actually contained Seroquel, Xanax,

12

or little liver pills is not an integral part of an essential element of the crime; concealing evidence intending to impair its use is the crime. The criminal act alleged here was to deprive the authorities of an investigative tool. At the time Perry swallowed the pills, no one knew with certainty the chemical composition of the pills, and it was necessary to take them into custody for analysis. Later chemical analysis revealed the other bottle did contain exactly what the prescription label stated: a dangerous drug, Clonazepam. So, the State at least presented evidence that the jury could believe that Perry knew he had possessed a dangerous drug, Clonazepam, at the time he consumed the contents of the other bottle. Further, the jury could believe that, by eating the pills, Perry was destroying or concealing the things in the bottle with intent to impair their later use. Whether the contents, after chemical analysis, turned out to be Seroquel or any other drug, is not the relevant issue.

Seroquel was simply the instrumentality used in the commission of the offense, and that is not an element of the crime. *See Flenteroy v. State*, 187 S.W.3d 406 , 411 (Tex. Crim. App. 2005) (appellant's defense did not depend on whether any particular type of weapon was used; variance between indictment's allegation of "screwdriver" and State's proof at trial of "hard metal-like object" was, therefore, immaterial); *see also Gharbi v. State*, 131 S.W.3d 481, 483 (Tex. Crim. App. 2003) (allegation that victim was "a protected person" not statutory element or "an integral part of an essential element of the offense" and need not be included in hypothetically correct jury charge); *Fuller*, 73 S.W.3d at 252 (allegation which is not statutory element [name of victim] need not be

13

included in hypothetically correct jury charge; additionally, proof that victim was "Mr. Fuller" or "Buddy" not material variance from indictment's allegation that victim was "Oren M. Fuller" in injury to elderly individual case). Further, when one knows an offense has been committed, the allegation in this indictment is not a statutory alternative manner and means of committing this crime. *See Curry v. State*, 30 S.W.3d 394, 403–04 (Tex. Crim. App. 2000).

Rather than, as argued by Perry, proving that he concealed or destroyed Seroquel, the State had to prove he concealed or destroyed something germane to the officer's investigation into Perry's alleged offense of possession of dangerous drugs. The contents of the pill bottle were not as important as the fact that the bottle and any contents were evidence. Chatterton estimated there were "15 - 20" pills in the bottle before Perry consumed them. Having found that proof of the specific drug was not an integral part of an element of the crime, we next consider whether there is a material variance between the indictment and the State's proof.

### 2. Variance

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar*, 46 S.W.3d at 246. "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." *Id.* at 246–47. In determining if the defendant's substantial rights have been prejudiced, we must consider two questions: (1) whether the indictment, as written, informed the defendant of the charge against

him or her sufficiently to allow the defendant to prepare an adequate defense at trial, and (2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *See In re S.C.*, 229 S.W.3d 837, 841 (Tex. App.—Texarkana 2007, pet. denied); *Brown v. State*, 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref'd).

This indictment gave Perry ample notice that the State intended to prove he destroyed evidence related to the offense. More specifically, the indictment indicated the specific thing he concealed was a dangerous drug. This information gave Perry copious notice so that he could prepare a defense at trial. The State actually provided evidence that, while Perry was being processed for a drug possession charge at the police station, he consumed the contents of a bottle which had been on his person and which was prescribed for someone else. The bottle was labeled that it contained the drug Seroquel; after consuming the contents, Perry was lethargic as occurs when one has ingested large quantities of Seroquel. While the State did not present scientific evidence of an analysis of the item consumed, it gave Perry proper notice that he was charged with tampering with evidence in a specific fashion. The criticism of this indictment was that it over-described the conduct of Perry that constituted tampering with evidence. The fact that the State gave a more descriptive notice of what it intended to prove than was actually necessary to be placed in the hypothetically correct jury charge does not render the notice improper. Further, we find there is no risk that Perry could be prosecuted a second time for this same crime. Consequently, the variance

15

between the allegation that Perry concealed a dangerous drug, Seroquel, and the proof at trial is immaterial and is not required to be included in the hypothetically correct jury charge.

We find the evidence legally and factually sufficient to support a jury's finding that Perry: 1) knew the offense of possession of dangerous drugs had been committed; 2) destroyed or concealed a thing; 3) with intent to impair its verity or availability in any subsequent investigation related to the offense. *See* TEX. PENAL CODE ANN. § 37.09. We overrule Perry's second and third points of error.

## IV.   Nonfinal Felony Conviction Not Available for Enhancement[5]

The State alleged Perry had been convicted of burglary of a vehicle on November 1, 1984, and of delivery of marihuana on June 21, 1988. On appeal, Perry claims the first conviction, for burglary of a vehicle, was for a probated sentence which was never revoked. The judgment in that case reveals on its face that Perry was sentenced to three years' imprisonment, but that such sentence was suspended and he was placed on probation (now community supervision). There is no evidence that Perry's probated sentence was ever revoked. Therefore, claims Perry, the conviction was not final for enhancement purposes, and the State should not have been allowed to rely on that conviction. The State argues Perry waived any complaint by failing to object to the purported enhancement conviction at trial.

---

[5]The trial court's judgment says Perry pled "true" to the second enhancement allegation; this is not correct. The record shows he pled "not true."

16

Where a defendant receives a probated sentence, and that probation is never revoked, the conviction does not become final. A probated sentence is not a final conviction for enhancement purposes unless it is revoked; a successfully served probation is not available for enhancement purposes. *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992). "In connection with Section 12.42 of the Texas Penal Code enhancement provisions and their predecessors, we have held uniformly that the prior convictions must be final convictions." *Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001). In Perry's situation, this point is especially pertinent: The State used two prior felony convictions to put Perry in the habitual offender penalty range, twenty-five years to life. He was sentenced to the lowest end of that range (twenty-five years). Because one prior was not eligible to be used for enhancement, Perry should only have been subjected to a second degree felony punishment range (tampering is a third degree felony;[6] one prior felony raises the level to a second degree felony[7]).

However, the State contends Perry has waived this complaint because he did not object on this basis to the trial court. The finality of enhancement convictions is part of the State's burden of proof: "in the absence of proof of an order revoking the petitioner's probation, there was no evidence that the first prior felony conviction was a final conviction." *Ex parte Murchison*, 560 S.W.2d 654, 656 (Tex. Crim. App. 1978). Also,

_____

[6]TEX. PENAL CODE ANN. § 37.09(c).

[7]TEX. PENAL CODE ANN. § 12.42(a)(3) (Vernon Supp. 2008).

17

> The State still had the burden to make a prima facie showing that any prior conviction alleged for enhancement became final before the commission of the primary offense. . . . Only then would the burden shift to Berry to prove otherwise. . . . . Here, the evidence offered by the State clearly proved that the prior felony conviction was not final before the commission of the primary offense. The State, therefore, failed to meet its burden of proof. Because the State failed to make a prima facie showing of finality, Berry had no burden to carry; nor was he obligated to complain about or object to the lack of finality of the alleged prior conviction. The State contends Berry waived any error on this issue by failing to object to the enhancement paragraph before trial. While the enhancement paragraph in the indictment may have been sufficient to charge the finality of the prior conviction, it was not sufficient to prove the finality of that conviction.

*Berry v. State*, 179 S.W.3d 175, 177–78 (Tex. App.—Texarkana 2005, no pet.) (citations omitted).

So it was not necessary for Perry to object at trial; this matter is properly before the Court.

Even though it was error to enhance Perry's primary offense with a prior conviction that was not final at the time of the commission of that offense, any nonconstitutional error, defect, irregularity, or variance that does not affect a substantial right must be disregarded. *See* TEX. R. APP. P. 44.2(b). We cannot disregard this error. As this was a second degree felony, Perry must have been sentenced within a range of between two and twenty years' imprisonment. Instead, he was sentenced to five years more than the maximum allowable. We sustain this point of error and remand to the trial court for a new punishment hearing.

## V.     Ineffective Assistance of Counsel

Perry's fifth point of error complains his trial counsel was constitutionally ineffective for failing to discover that one of the State's enhancement allegations was a nonfinal conviction (see

discussion *supra*).  This allegation affects only the punishment issue and, as we have ordered a new punishment trial, we need not address this issue.

We affirm the judgment of guilt and remand the case to the trial court for a new punishment trial.

Jack Carter
Justice

Date Submitted:      April 2, 2009
Date Decided:        April 29, 2009

Do Not Publish