

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00193-CR

_____

RICARDO TREJO MONTES, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 3
Denton County, Texas
Trial Court No. CR-2019-01471-C

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I.  INTRODUCTION

Following the denial of his motion to suppress, Ricardo Trejo Montes pleaded nolo contendere to the offense of evading arrest or detention.[1]  The trial court sentenced Montes to fifty-three days in jail, which equaled the time he had already served in jail awaiting trial.  In one issue, Montes contends that the trial court erred by denying his motion to suppress because the police lacked reasonable suspicion to detain the vehicle wherein the police had found him.  We will affirm.

### II.  BACKGROUND

Peace Officer Victoria Grayson of the Carrollton Police Department was the only witness to testify at the suppression hearing.  According to Grayson, she received a 911 dispatch on the night of March 17, 2019, that several people were at Frankie's Bar "fighting and throwing bottles."  Grayson said that when she arrived at the bar, she activated her overhead lights and that her first goal was to "make sure nobody was trying to leave that was involved" in the disturbance.

The first thing that Grayson noticed was a truck leaving the parking lot, so she radioed her backup that the people in the truck may have been involved in the fight.  But Grayson said that she remained at the bar because she saw another vehicle, a Dodge Durango, trying to leave from its parked position in front of the bar, so she

---

[1]*See* Tex. Penal Code Ann. § 38.04.

pulled her squad car behind it.[2]  Grayson said that she believed the Durango was about to leave because it was running and its reverse lights were engaged.  As she stepped out of her squad car with the intent to make contact with the Durango's driver, a bar employee "was motioning to the [Durango]," indicating that Grayson needed to make contact with whoever was inside.  By Grayson's account, a female exited the Durango almost immediately and told Grayson that she had just been slapped in the face.  Because she was alone, Grayson asked the female to sit down while she further secured the scene.  From there, Grayson used her flashlight to "clear" the Durango and make sure no one else was inside.  As she shined her flashlight in, she saw Montes "crouching down, almost laying down shirtless and sweaty in the backseat."  As soon as Grayson saw him, Montes "popped out of the car and took off running."

The State introduced and published for the trial court video footage from Grayson's body camera that night.  The footage confirmed much of Grayson's testimony, but admittedly it is difficult to see the employee motioning toward the Durango.  In the footage, Grayson can be heard asking the employee whether the truck that had left was involved, to which the employee said it was not.  In addition to corroborating much of her testimony, the footage also shows Grayson chasing

---

[2]Grayson testified that the truck and the Durango were the only two vehicles that she observed leaving when she arrived.

Montes across the parking lot as he fled and then physically subduing him as other officers arrived.

Grayson testified that the reason she and other officers were interested in stopping any vehicles from leaving the bar as they arrived was because in her experience as an officer "when it comes to major disturbances like this where there's several people at the location, if they know that the police are being called, it's not uncommon for people to flee the scene as we're pulling up or, you know, shortly before we get there."

The trial court denied Montes's suppression motion. In its findings of fact, the trial court made these specific findings:

1. Officer Victoria Grayson is a certified peace officer currently employed with [t]he Carrollton Police Department.

2. Office Grayson testified before this Court at a hearing on defendant's Motion to Suppress on May 2, 2019. The Court finds her testimony to be credible in all respects.

3. On March l7, 2019, Officer Grayson was on routine patrol as a police officer in the city of Carrollton, Denton County, Texas.

4. Officer Grayson testified that on March 17, 2019[,] she was in full uniform and in a marked patrol vehicle.

5. Officer Grayson testified that during her night shift, she was dispatched to Frankie's Bar at 2515 E. Rosemeade Parkway, Carrollton, Denton County, Texas[,] in reference to a major disturbance where individuals were actively fighting.

6. Officer Grayson testified dispatch informed her there were multiple suspects[,] and the suspects were Hispanic males and females.

4

7. Officer Grayson testified that as she approached the scene she had her emergency lights activated.

8. Officer Grayson testified as she approached the bar she observed a truck leaving the parking lot[,] and she dispatched out this information to a backup unit.

9. Officer Grayson testified that as she approached the bar she observed a Dodge Durango directly in front of the bar attempting to leave the scene.

10. Officer Grayson testified that . . . she pulled her marked patrol vehicle directly behind the Dodge Durango.

11. Officer Grayson testified that in her training and experience it is common to stop vehicles from leaving the scene of major disturbances such as this one to investigate their involvement.

12. Officer Grayson testified that the purpose of pulling her patrol vehicle behind the Dodge Durango was to stop the vehicle from leaving so she could investigate its occupants' involvement.

13. Officer Grayson testified she observed only these two vehicles leaving the scene.

14. Officer Grayson testified that when she exited her vehicle an employee was pointing at the Dodge Durango.

15. Officer Grayson testified that this indicated to her the occupants of the vehicle may have been involved in the altercation she was dispatched to.

16. Officer Grayson testified that immediately after she exited her vehicle a female got out of the Dodge Durango and voluntarily stated to the officer that she had just been slapped. Officer Grayson testified that she told the female driver to have a seat by the bar so she could figure out what was going on.

17. Officer Grayson testified this statement led her [t]o believe the driver of the Dodge Durango was involved in the altercation.

5

18. Officer Grayson testified that she observed a shirtless . . . male in the backseat.

19. Officer Grayson testified that the male matched the dispatch description of the males involved in the altercation and the male was sweaty.

20. Officer Grayson testified that these observations of the male led her to believe that the male may have been involved in the altercation.

21. Officer Grayson identified the male passenger of the Dodge Durango as the defendant.

22. Officer Grayson testified that when she shined her flashlight into the backseat, the defendant then exited out of the back[-]passenger door and ran on foot from the scene.

23. Officer Grayson testified she ran after the defendant [and] verbally identified herself as police[,] and the defendant continued to run from her.

24. Officer Grayson testified that she eventually detained the defendant and placed him under arrest for Evading Arrest or Detention.

25. Officer Grayson testified that not all of the details she testified to in Court were in her police report because it was Saint Patrick's Day. She testified this was a very busy night[,] and she had limited time to prepare her report of this incident.

26. The Court found that State's Exhibit l, the officer's in-car video, was an accurate depiction of the events that evening and relied on the video as well as the officer's testimony.

Montes now appeals the trial court's order denying his suppression motion.[3]

---

[3]Montes concedes in his brief that the trial court's findings of fact are supported by the record.

### III. DISCUSSION

In one issue, Montes contends that the trial court erred by denying his motion to suppress because Grayson lacked reasonable suspicion to detain the Durango. We disagree.

### A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions

de novo.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling.  *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818–19.  We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  *Id.* at 818.

## B.    The Law of Investigatory Detentions

We examine the reasonableness of a temporary detention based on the totality of the circumstances.  *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).  To justify an investigative detention, an officer must have specific articulable facts which, premised upon her experience and personal knowledge, and when coupled with the logical inferences from those facts, would warrant the intrusion on the detainee.  *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989).  Although more than an inarticulate hunch is necessary, a police officer, in appropriate circumstances, may stop and detain an individual "to investigate suspected criminal behavior even though there is not probable cause to make an arrest."  *Hernandez v. State*, 523 S.W.2d 410, 411

8

(Tex. Crim. App. 1975). To determine whether an officer is justified in making such an intrusion, the court must find that the articulable facts used by the officer created a reasonable suspicion that some activity out of the ordinary was occurring or had occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime. *Garza*, 771 S.W.2d at 558.

Under circumstances similar to this case, our sister court in Houston has held that an officer had sufficient reasonable suspicion to justify an investigatory stop. *See Brooks v. State*, 830 S.W.2d 817, 819–21 (Tex. App.—Houston [1st Dist.] 1992, no pet.). In *Brooks*, an officer, responding to a "burglary-in-progress" call, became suspicious of a parked car in the area of the burglary because it pulled off the road when the officer approached. *Id.* at 819. The officer followed the car and radioed ahead to a second officer and instructed the second officer to stop the car, while the officer returned to check on the reported burglary. *Id.* The second officer testified that he stopped the defendant, "to just find out whether or why he was leaving the scene or if he had any evidence of a break-in, if at all." *Id.* He further testified that the defendant committed no felony or breach of peace or traffic offense, and the defendant made no attempt to escape in his presence. *Id.* Once the officer stopped the defendant, he ran a driver's license check and found the defendant had outstanding warrants. *Id.*

In deciding the detention issue, the *Brooks* court held that the stop was justified because the officers were able to articulate that (1) a burglary in progress was reported

9

at a certain location, (2) the defendant was seen driving from the area as officers arrived, and (3) based on the experience of the officers, it was not uncommon for burglary suspects to be leaving or even be gone when officers arrived. *Id.* at 821. The *Brooks* court further held that it was "customary to stop and investigate anyone leaving the immediate area of a burglary in progress." *Id.*

## C. The Reasonableness of Grayson's Detention

Like in *Brooks*, where officers were responding to a burglary in progress at a specific location, here, Grayson was responding to a major disturbance at Frankie's Bar involving several people that was in progress when she received the 911 dispatch. Also like in *Brooks*, where the defendant was seen driving away from the area as officers arrived, here, the Durango that Montes was secreted away in was attempting to leave the bar as Grayson arrived. And like in *Brooks*, where officers testified that based on their experience it was not uncommon for burglary suspects to be leaving or even be gone when officers arrived, here, Grayson testified that the reason she and other officers were interested in stopping any vehicles from leaving the bar was because when police respond to similar disturbances "it's not uncommon for people to flee the scene as [police are] pulling up or . . . shortly before [they] get there." *See State v. Kerwick*, 393 S.W.3d 270, 276 (Tex. Crim. App. 2013) (reasoning that "flight" may be considered among the totality of the circumstances in a reasonable-suspicion analysis). We conclude that like in *Brooks*, where the court held that it was "customary to stop and investigate anyone leaving the immediate area of a burglary in progress,"

10

here, in instances like this, it is customary for responding officers to stop and investigate anyone leaving the immediate area of a major disturbance in progress. 830 S.W.2d. at 821.

We thus hold that, under the totality of the circumstances in this case, Grayson's suspicion that the occupants of the Durango could have been involved in illegal activity was reasonable and was based on articulable facts and circumstances. *See id.* at 819–21; *see also Adams v. State*, Nos. 05-12-00829-CR, 05-12-00830-CR, 2013 WL 1614882, at *4 (Tex. App.—Dallas Apr. 11, 2013, no pet.) (mem. op., not designated for publication) (holding that police officers had sufficient reasonable suspicion to justify an investigatory stop of defendant's vehicle when responding to a burglary in progress at a certain location and officers observed a lone vehicle departing the area of the reported crime); *Smith v. State*, No. 01-01-00272-CR, 2002 WL 1435980, at *3 (Tex. App.—Houston [1st Dist.] July 3, 2002, pet. ref'd) (mem. op., not designated for publication) (same). Accordingly, we hold that the trial court did not err by denying Montes's suppression motion, and we overrule his single issue.

## IV. CONCLUSION

Having overruled his single issue on appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 14, 2019