Joshua FLORES, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–96–00838–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 9, 1998.

---

Norb Mahnke, Houston, for appellant.

Bill R. Turner, Bryan, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

MURPHY, Chief Justice.

Appellant, Joshua Flores ("Flores"), entered a plea of guilty before the trial court to the offense of unauthorized use of a motor vehicle. *See* TEX. PENAL CODE ANN. § 31.07 (Vernon 1994). The trial court assessed punishment at two years in a state jail facility. Punishment was probated to three years community supervision and a five hundred dollar fine. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 (Vernon Supp.1998). Flores appeals the trial court's denial of his motion to suppress evidence. We affirm.

## I. Background

While responding as backup assistance to a midnight dispatch for an assault at a bar, Officer Dee Coleman ("Coleman") of the Bryan Police Department stopped a black Blazer driven by Flores. Coleman had first arrived at the bar's street location, and, finding the first entrance to the bar's parking lot was blocked by other emergency vehicles, proceeded to a second entrance to the lot. While entering the second entrance, she observed a black Blazer turning from the direction where the emergency vehicles were located and noticed the occupants of the Blazer were Hispanic juveniles. She recalled that department detectives believed suspects meeting this description were responsible for a recent rash of car burglaries in the town's parking lots. Based on this information, and the fact the juveniles were present, at a late hour, in the parking lot of an establishment catering to adults, Coleman decided to stop the vehicle and investigate.

Noticing the Blazer approach the entrance where she was located, Coleman used the police vehicle to block the Blazer's egress from the lot. After turning on her vehicle's flashing lights to make the stop, she observed the Blazer's reverse lights come on, but, believing this indicated the Blazer was preparing to stop, put her patrol car in park and exited the vehicle. Once she was outside the patrol car, Coleman realized the Blazer was actually beginning to back up, so she began walking toward the vehicle and telling the driver to stop. The Blazer stopped after Coleman had repeated her request several times.

After Coleman had exited her vehicle, she remembered an earlier conversation over the police radio concerning a disturbance involving a black Blazer and Flores. When she arrived alongside the Blazer, she recognized

the driver as Flores. Coleman identified the Blazer as the vehicle reported stolen in the earlier disturbance and arrested Flores.

In the trial court, where he was charged with unauthorized use of a motor vehicle, Flores filed a motion to suppress all of the evidence seized from him as a result of an alleged illegal detention, arrest, and subsequent illegal search and seizure. The trial court conducted a hearing comprised solely of Coleman's testimony and denied Flores's request.

## II. Discussion

Flores argues in his sole point of error before this court that officer Coleman was without reasonable suspicion or probable cause to detain him. The State admits Coleman lacked probable cause, therefore we address only whether she had reasonable suspicion to make an investigatory stop of Flores.

■ We review determinations of probable cause and reasonable suspicion *de novo*. *See Loesch v. State*, 958 S.W.2d 830, 833 (Tex.Crim.App. 1997); *Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997) (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). We defer to trial court findings based on evaluations of credibility and demeanor of witnesses. *See Guzman*, 955 S.W.2d at 89. Because officer Coleman was the only witness testifying at the hearing on the motion, and the trial court ruled that she had reasonable suspicion for the search, the trial court obviously weighed these considerations in her favor. Nevertheless, our independent review is necessary "to maintain control of, and to clarify the legal principles" behind determinations of reasonable suspicion. *See Ornelas v. United States*, 517 U.S. at 696–98, 116 S.Ct. at 1662.

■ The Fourth Amendment to the U.S. Constitution forbids *unreasonable* searches and seizures, and Texas courts adhere to this requirement of reasonableness. *See Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20

L.Ed.2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997). A necessary inquiry in determining reasonableness, and the ultimate issue in the present case, is whether the officer's action was justified at its inception.[1] *See Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1878–79; *Davis v. State*, 947 S.W.2d at 242. "The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant intrusion." *See id.* (*quoting Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–80). "[D]ue weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *See Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

■ Flores cites several Texas cases holding reasonable suspicion lacking when the conduct raising suspicion was as consistent with innocent activity as with criminal activity. *See, e.g., Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983); *Schwartz v. State*, 635 S.W.2d 545, 547 (Tex.Crim.App. [Panel Op.] 1982). The Texas Court of Criminal Appeals has recently disavowed the "consistent with innocent activity" construct in favor of a "totality of the circumstances" approach. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997). Thus, "the reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Id.*

The State argues there were five articulable bases for Coleman's stop of Flores: (1) she noticed the Blazer coming from the direction where the assault occurred; (2) she noticed the occupants of the vehicle met a general description of suspects in a recent rash of crimes; (3) she noted the occupants

---

1. *Terry* also established that it was necessary to determine "whether [the stop] was reasonably related in scope to the circumstances which justified the interference in the first place." *See*

*Terry, 392 U.S. at 19–20, 88 S.Ct. at 1879.* Flores does not argue Coleman's actions were not reasonably related in scope if the stop was warranted, and thus we do not address this issue.

were juveniles driving in the parking lot of an establishment open only to adults; (4) she remembered an earlier dispatch concerning the theft of a black Blazer that night; and (5) the driver of the Blazer attempted to flee when she began effecting the stop.

■ While we agree Coleman's remembrance of the radio dispatch would strongly support a finding that reasonable suspicion existed, we cannot consider this basis because Coleman herself noted she did not remember the dispatch until after the inception of the stop. Indeed, Coleman testified, unequivocally, that she did not remember the dispatch *until after the stop occurred:*

> Q: So when you approached the car and you saw this Joshua Flores, it was at that point after you had already stopped the car that you remembered that you had heard something about a black Blazer being stolen by Joshua Flores earlier that evening, isn't that right?
>
> A: Right.
>
> . . .
>
> Q: It was only at the time that your approached the Blazer and actually made a close observation of the driver that you saw that it was Joshua Flores, right, and you remembered that there had been a report of a black Blazer earlier, correct?
>
> A: Correct, yes, sir.

Even under the State's assertion that a seizure does not occur until a suspect has yielded to a police show of authority, see *Johnson v. State*, 912 S.W.2d 227, 235–36 (Tex.Crim. App.1995), Coleman's testimony indicates the dispatch could not legally be considered a basis for the stop.[2]

■ Nevertheless, we believe the remaining factors the State cites, viewed under a totality of circumstances, are sufficient to justify officer Coleman's stop of Flores. Coleman was aware an assault had just taken place in the bar's parking lot and she noticed the Blazer fleeing the area where the emergency vehicles were located. She noted it was unusual for a group of juveniles to be located in the parking lot of an establishment open only to adults at the midnight hour. She also identified the occupants of the Blazer as Hispanic juveniles, a description matching police information on suspects in a recent rash of car burglaries. *See, e.g., Gearing v. State*, 685 S.W.2d 326, 327–29 (Tex.Crim.App. 1985) (temporary detention warranted where officer familiar with "the criminal activity in the parking lot or lots thereof, and of recent arrests"). Although considerations of race, taken alone, are impermissible to constitute reasonable suspicion, race can be considered if found in conjunction with other articulable facts. *See Louis v. State*, 825 S.W.2d 752, 754–56 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). Lastly, Coleman observed Flores attempt to flee when she made a showing of authority to effect the stop. *See Gilbert v. State*, 874 S.W.2d 290, 295 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (actions after "being signalled to pull over" are "relevant to a determination of reasonable suspicion"). These facts, considered together, were sufficient to support a reasonable suspicion by officer Coleman that Flores "[was], had been, or soon [would] be engaged in criminal activity." *See Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983).

## III. Conclusion

We affirm the judgment of the trial court.

---

2. Moreover, we question the application to the present facts of the principle that a seizure does not occur until a suspect has yielded to the show of authority. The principle was developed to address "abandonment" cases—situations where a suspect abandons evidence during a period between when the police make a showing of authority and the suspect yields to that authority. *See, e.g., California v. Hodari, D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). While the rule has been expanded to include actions of the suspect after the officer's showing of authority, such as flight from the police, see *Johnson v. State*, 912 S.W.2d 227 (Tex.Crim.App.1995); *Gil-*

*bert v. State*, 874 S.W.2d 290 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), we are wary of extending the rule to meet situations where the suspect commits no act to further an officer's suspicions. Nevertheless, we need not decide whether an officer's "recaptured memories," occurring during a period after the officer has made a showing of authority and before the suspect yields to the showing, can be considered an articulable fact supporting reasonable suspicion because officer Coleman conceded that she did not remember the dispatch until after Flores yielded to her show of authority.