**AFFIRM; and Opinion Filed April 11, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-00829-CR
No. 05-12-00830-CR

**WESLEY MONTGOMERY ADAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-15962-N**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Murphy, and Fillmore
Opinion by Justice Fillmore

Following the denial of his motion to suppress, Wesley Montgomery Adams pleaded guilty to the offenses of burglary of a habitation and theft of property of a value of $1500 or more but less than $20,000. The trial court deferred findings of guilt and placed Adams on community supervision. On appeal, Adams contends the trial court erred by denying his motion to suppress because the police lacked probable cause or reasonable suspicion to detain him. We affirm. We limit recitation of the background and facts of this case because these matters are well known to the parties. We issue this memorandum opinion because the law to be applied is well settled. *See* TEX. R. APP. P. 47.2(a), 47.4.

## Background

Adams was charged with burglary of a habitation and theft of property of a value of $1500 or more but less than $20,000. Prior to trial, Adams filed a motion to suppress all evidence "obtained illegally," contending his stop and detention was without probable cause or reasonable suspicion.

At the hearing on the motion to suppress, the trial court heard evidence that in March 2011, the city of Coppell had a rash of car burglaries, and police officers were working "different hours" to try to apprehend the offenders. At 12:19 a.m. on March 9, a police dispatch went out concerning a burglary in progress in a neighborhood near North Moore and Parkway Boulevard. The dispatch reported that two or three suspects were seen running in an unknown direction.[1] Coppell police officer Tonard Warmsley was less than a half-mile from the neighborhood and, along with four or five other officers, responded to the call. Warmsley testified the neighborhood had only two entrances/exits, both of which came out onto Parkway Boulevard. He and some of the other officers established a perimeter around the neighborhood while the remaining officers roamed inside the neighborhood in search of the burglars. Within one to three minutes of receiving the dispatch, Warmsley saw a car exiting the neighborhood. The car was occupied by two people and was the only one in the area. Warmsley followed the car, which stopped at a stop sign at North Moore and Parkway Boulevard. The car stopped with its front wheels beyond the white line perpendicular to the stop sign and almost into the crosswalk. Believing the driver committed a traffic violation, Warmsley activated his lights and conducted a traffic stop.

---

[1] Warmsley testified the call reported two suspects; another officer testified the call reported three suspects.

2

Warmsley approached the vehicle's passenger side while officer Anthony Maurer approached the driver side. As he approached, Warmsley saw the passenger lean over as if he were putting something under the seat or reaching for something. The passenger then rolled down the window, and Warmsley noticed both men were sweating and breathing deeply, although it was a "very cold" night. Warmsley said it appeared that they had just engaged in "physical activity" that caused them to sweat.

Warmsley had the passenger, a 16-year-old juvenile, get out of the car and began to ask him questions. The passenger admitted he and Adams had been "car-hopping," or walking through the neighborhood checking car doors to see if they were unlocked and, if so, entering the cars and taking "what [they] could." The passenger said he only took cigarettes, but Adams took "several things." The passenger told Warmsley that he and Adams had just come from a garage attached to a home. Warmsley arrested the passenger for possession of stolen property.

While Warmsley talked to the passenger, Maurer talked to Adams, the driver of the car. After several minutes, Maurer arrested Adams on a traffic violation and then read Adams his *Miranda*[2] warnings. Adams agreed to show Maurer the locations of the burglaries he had been involved in and directed Maurer to the neighborhood where Adams was seen leaving minutes earlier. Adams identified several cars in various alleys that he and the passenger attempted to burglarize.

After both suspects were placed under arrest, police performed an inventory of the vehicle driven by Adams and found a safe containing five Texas Instrument calculators, a Canon Zoom Lens camera, a Tom-Tom GPS, a Sirion stereo faceplate, a Cobra 950 radar detector, an iPod Nano, cigarettes, four $1 bills, and three gift cards to retail outlets.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

At the conclusion of the evidence, Adams made two arguments in support of his motion to suppress evidence obtained as a result of an illegal stop and detention. First, Adams argued police officers did not have probable cause or reasonable suspicion to stop and detain him because his vehicle did not enter the crosswalk, which he contends is required to violate section 544.010(c) of the Texas Transportation Code. Second, Adams argued police officers did not have probable cause or reasonable suspicion to believe that he was recently involved in a burglary offense and, therefore, his stop and detention were without justification. After hearing the evidence and arguments, the trial court denied Adams's motion to suppress.

**Analysis**

On appeal, Adams raises the same two issues that he raised in the trial court. Because we conclude Warmsley articulated specific facts and circumstances which, when taken together with rational inferences from those facts and circumstances, constitute reasonable suspicion that Adams was or had been involved in criminal activity, and Warmsley was therefore justified in detaining him, we begin our analysis there.

When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings. *Id*. Thus, we afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when its implicit fact finding is based on an evaluation of credibility and demeanor. *Id*. This same highly deferential standard applies regardless of whether the trial court has granted or denied a motion to suppress evidence. *Id*. Thus, the party that prevailed in

the trial court "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id*. We review de novo the trial court's application of the law. *Id*.

A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). To stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27; *see also Foster*, 326 S.W.3d at 613. Specifically, the police officer must have some minimal level of objective justification for making the stop, that is, when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry,* 392 U.S. at 21; *see also Foster*, 326 S.W.3d at 613. In making a reasonable suspicion determination, we disregard the subjective intent of the officer making the stop and consider solely, under the totality of the circumstances, whether there was an objective basis for the stop. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *State v. Kerwick*, No. PD-1837-11, 2013 WL 690840, at *2 (Tex. Crim. App. Feb. 27, 2013).

This case has facts strikingly similar to those in *Sanders v. State*, 992 S.W.2d 742 (Tex. App.—Amarillo), *pet. ref'd*, 16 S.W.3d 805 (Tex. Crim. App. 1999) (Meyers, J. dissenting). In *Sanders*, police officers were working in a particular area of Amarillo where there had been numerous burglaries. At about midnight, a police dispatcher advised the officers of an attempted

burglary in the area by two male subjects who fled north on foot in an alley. *Id*. at 743. An officer proceeded to the scene and, when he was three or four blocks away, encountered a vehicle with two persons in it heading away from the crime scene but in the same direction as the two suspects fled. *Id*. at 743–44. The officer stopped the vehicle. The stop was made two or three minutes after receiving the dispatch call. *Id*. at 744. After stopping the vehicle, the police ultimately arrested Sanders and charged him with possession of marijuana.

The officer in *Sanders* testified there was "very, very little" traffic in that area at midnight and the vehicle he stopped was the only one in the area. *Id*. He also said it was not unusual for burglary suspects to park a couple of blocks away from the building or residence, commit the burglary, and then go to the vehicle on foot and drive away. *Id*.

Sanders argued he was illegally detained and any incriminating evidence acquired as a result of his initial detention should be suppressed. After hearing the evidence, the trial court denied Sanders's motion to suppress evidence, and the Amarillo Court of Appeals affirmed that decision. *Id*. at 743. In reaching its decision, the appellate court analyzed several cases and noted the similarity between the facts in the case before it and two other cases, *Brooks v. State*, 830 S.W.2d 817 (Tex. App.—Houston [1st Dist.] 1992, no pet.), and *Flores v. State*, 967 S.W.2d 481 (Tex. App.—Houston [14th Dist] 1998, no pet.).

In *Brooks*, the police responded to a reported burglary in progress at an apartment complex and stopped the defendant driving out of the complex to ask what he was doing at the scene of the reported burglary. 830 S.W.2d at 819. After running a driver's license check, the officer found the defendant had outstanding traffic warrants and arrested him. *Id*. The appellate court concluded that, under the facts, the stop was not illegal, noting the officers' testimony that it was not uncommon for burglary suspects to be leaving or even gone when officers arrive at the

6

scene, and it is "customary to stop and investigate anyone leaving the immediate area of a burglary in progress." *Id*. at 821.

In *Flores*, an officer was responding to a midnight police dispatch concerning an assault at a bar and stopped the defendant's vehicle as it was leaving the bar's parking lot. 967 S.W.2d at 482. The vehicle was occupied by several Hispanic juveniles. The officer stopped the vehicle, not because she suspected its occupants of participating in the assault, but because she recalled a rash of burglaries that detectives believed had been committed by Hispanic juveniles. *Id*. Consequently, the officer wanted to investigate why the juveniles were out so late at night exiting the parking lot of an adult bar and determine whether they had been involved in burglary activity. *Id.* As the officer approached the car, she recognized the defendant as having been reportedly involved in an earlier disturbance in which a vehicle was stolen. *Id*. at 482–83. She arrested the defendant and charged him with unauthorized use of a motor vehicle. The defendant sought to suppress all evidence seized as a result of the stop of the vehicle. *Id*. at 483. The appellate court found the stop reasonable under the facts and circumstances. *Id*. at 484.

The Amarillo Court of Appeals noted in *Sanders* that all three cases involved officers responding to a report of a crime and then observing a vehicle leaving the area of the reported crime, yet in none of the cases was an occupant identified as having been at the very location of the reported crime before the vehicle was stopped. *Sanders*, 992 S.W.2d at 748–49. The Amarillo Court of Appeals then set out specific facts in its case supporting reasonable suspicion, including that the dispatch call came shortly before midnight, a time when there was "very, very little" traffic in the area; the call reported an attempted burglary in an area that had been the scene of multiple recent burglaries; two suspects reportedly were involved; the persons departed in a northerly direction; the officer believed that burglars often parked a getaway car near the

7

residence or building to be burglarized and then walked back to their car after the crime; the officer encountered the Sanders's vehicle within two to three minutes after receiving the dispatch; the officer observed no other cars in the area; Sanders's car contained two people, the same number that had reportedly been involved in the crime; and the vehicle was heading away from the crime scene in the same direction that the suspects had fled on foot. *Id*. at 749. The court concluded that, under the totality of the circumstances, the officer's suspicion that the occupants of the vehicle could have been involved in illegal activity was reasonable and was based on articulable facts and circumstances. *Id*.

Here, as in *Sanders*, the officer articulated more than a hunch that Adams was involved in the burglary in progress that had just been dispatched. The dispatch call came after midnight directing officers to a neighborhood with limited ingress and egress. The area was dark and quiet, and no other cars were in the area when Warmsley saw Adams's vehicle leaving the area just one to three minutes after Warmsley received the dispatch call. The call reported two suspects, according to Warmsley, and the vehicle contained two occupants. Under the totality of the circumstances, we conclude Warmsley articulated specific facts and circumstances which, taken together with rational inferences from those facts and circumstances, constituted reasonable suspicion that Adams was or had been engaged in criminal activity, thus justifying the stop and detention. Therefore, the trial court did not abuse its discretion in denying Adams's motion to suppress. We resolve Adams's second issue against him. Given this disposition, we need not address his first issue. *See* TEX. R. APP. P. 47.1.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120829F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WESLEY MONTGOMERY ADAMS,
Appellant

No. 05-12-00829-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-15962-N.
Opinion delivered by Justice Fillmore;
Justices Lang-Miers and Murphy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of April, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WESLEY MONTGOMERY ADAMS,
Appellant

No. 05-12-00830-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-15982-N.
Opinion delivered by Justice Fillmore,
Justices Lang-Miers and Murphy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of April, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE