**Opinion issued June 5, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00656-CR

———————————

**CHARLES DEWAYNE JORDAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1363586**

---

## MEMORANDUM OPINION

A jury found appellant, Charles Dewayne Jordan, guilty of possession of a controlled substance, namely cocaine weighing between one and four grams. Appellant pleaded true to two felony enhancements, and the trial court assessed

punishment at 30 years' confinement. In two related points of error on appeal, appellant contends the trial court erred by admitting the written statement of a co-defendant in violation of the prohibition against hearsay evidence and his Sixth Amendment right to cross-examine witnesses. Appellant also contends that the trial court erred in denying his motion to suppress evidence and in assessing court costs. We affirm.

## BACKGROUND

On October 14, 2012, Officer D. Alexander received a dispatch to meet with a citizen about a welfare check. As a result of the dispatch, Alexander met with Marta Castro, who reported that her ex-girlfriend was being held against her will. Castro also mentioned narcotics use and prostitution.

Based on Castro's report, Alexander and Castro drove to the Sun Suites Hotel in Harris County, Texas. When they arrived, the Houston Police Gang Unit was already there conducting an unrelated narcotics investigation on the third floor of the hotel. Alexander then handed off the investigation of Castro's report to the Gang Unit for further investigation.

Based on Castro's report, Sergeant J.C. Wood approached room 135 of the hotel and knocked on the door, which was opened by Robin Jordan. Jordan said that she was not being held against her will and gave consent to search the hotel room. Inside the room, police found drug paraphernalia and crystal

2

methamphetamine. Jordan was arrested for possession of the drugs found in the hotel room. She also signed a written statement in which she stated that all of the drugs found in the hotel room belonged to her.

While police were searching the hotel room, Castro waited outside with another member of the gang unit, Officer Guzman. Castro told Guzman that she saw her girlfriend in the back seat of a green car that had driven into the parking lot. Appellant, identified by Castro as C.J., was driving the green car. He pulled into a spot, but when Officer Guzman yelled, "Stop, police" and began running toward the car, appellant pulled out of the spot and began leaving the way he had come. Guzman ran in front of the green car, while his partner, Officer Myszka, approached the passenger side.

The officers noticed that appellant was driving, another male was in the front seat, and a female that Castro identified as her ex-girlfriend was in the backseat. As the officers approached the car, they noticed appellant reach down toward the floorboard of the driver's side with both hands. They also saw the passenger reach into the backseat, while the female passenger remained still.

Once the car stopped, Officer Guzman removed appellant from the driver's side and Officer Myszka removed the male passenger from the passenger's side. A third officer removed the female passenger from the back seat. Both of the men were handcuffed for the officers' safety while conducting the investigation. Once

3

appellant was out of the car, Officer Guzman was able to see a white substance shaped like a "cookie" partially protruding from under the driver's side seat. A field test revealed that the substance was crack cocaine.

Appellant was arrested for the cocaine recovered from the floorboard under his seat. The passengers were released because the officers believed that the cocaine was not near enough to them to be within their care, custody, or control. The female passenger denied that she was being held against her will.

## ADMISSION OF WITNESS'S WRITTEN STATEMENT

In his first point of error, appellant contends "[t]he trial court abused its discretion in admitting the statement of Robin Jordan because her statement was inadmissible hearsay." In his second point of error, appellant contends "[t]he trial court abused its discretion in admitting the statement of Robin Jordan because her statement violated Mr. Jordan's Sixth Amendment right to cross examine and confront the witness against him."

*Standard of Review*

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim.

4

App. 2010); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Sandoval*, 409 S.W.3d at 281. We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 281. If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of law applicable to that ruling, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Sandoval*, 409 S.W.3d at 297.

*Background*

During the appellant's cross-examination of Sergeant J.C. Wood, the investigating officer, the following exchange took place:

Q. Okay. You mentioned something about a statement by Robin Jordan. Do you recall that in your report, in you supplement?

A. Yes.

Q. But your supplement said something about a handwritten statement by Robin Jordan.

A. Yes. ***She did—because there was—she identified other occupants being in the room. Once the illegal narcotics was [sic] found in the room, she writes a statement saying that everything in the room was hers and only hers. She did not want anyone else to assume responsibility or be criminally charged with anything that was found inside the room.*** (Emphasis added).

Q. Okay.

5

A. So, she was taking responsibility for that.

Q. And she was charged, correct?

A. Yes, sir, she was.

Q. Okay, But she also, in her statement, indicated that the drugs in the car were hers as well, correct?

A. I don't recall that. She may have. She wasn't in care, custody, and control of the car. Mr. Jordan was.

Q. Who would have that statement that she gave?

A. A copy of it would be in the file, either filed in the property room as evidence or in the case at the Gang Division office.

Q. Okay. And who would have the case file?

A. It's retained in the office. One of the officers that are still assigned to that gang unit could go get it.

　　* * * *

Q. If a statement was made by another party in the case as to who possessed the narcotics, wouldn't that be an important part of the investigation?

A. It very well could be.

Q. Okay. And is that something you'd be able to obtain or another officer could obtain for the jury to see?

A. Certainly.

The next day, during the testimony of Officer J. Myszka, another investigating officer, the State sought to introduce Robin Jordan's written

6

statement into evidence. Even though he had raised the issue of the availability of Robin Jordan's statement the day before, appellant objected, stating:

> Your Honor, I realize I brought the issue up on cross-examination, but I don't know that that overcomes the hearsay objection to [the statement]. I'm not aware of an exception, but—I could be wrong, but I don't believe that would allow them to offer this statement into evidence. It's a way to bring in testimony of a witness that's not on the witness stand and would essentially deny us the right to confront and cross-examine Robin Jordan in this case.

The State argued that appellant's cross-examination of Sergeant Wood "opened the door to the statement" and should be admitted pursuant to Texas Rule of Evidence 107.[1] The trial court overruled appellant's hearsay and confrontation objections and found Robin Jordan's written statement to be admissible.

Thereafter, during the State's questioning of Officer Myszka, the following exchange took place:

> Q. Did [Robin Jordan] also give a statement as to what of the narcotics belonged to her.
>
> A. Yes, ma'am. She wrote a handwritten statement in her own words, her own writing, as far as what belonged to her in that room.

---

[1] Rule 107, often referred to as the rule of optional completeness, provides:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

Tex. R. Evid. 107.

7

Q. And after you processed that arrest as well as the defendant's arrest, did you keep that statement somewhere?

A. Yes, ma'am. We kept it in our case file at the gang office where I work.

Q. Your Honor, may I approach?

[Trial Court]: You may.

Q. I'm handing you what's been marked as State's Exhibit 7. Do you recognize it?

A. Yes, ma'am.

Q. And how do you recognize it?

A. It's just a brief statement from Robin Jordan in her handwriting, her signature, and the date that she wrote it.

Q. Is this the same statement taken on October 4th from Robin Jordan?

A. Yes, ma'am, it is.

Q. State offers State's exhibit 7 to defense counsel at this time, moves to admit.

[Defense Counsel]: Your Honor, we would re-urge the same motion previously made, same objection.

[Trial Court]: I understand. Based on previous conversations during the lunch hour, State's 7 is admitted under Rule 107.

* * * *

Q. Now, if you may, Officer, if you can read that, would you mind reading what the statement states—

8

A. Yes, ma'am.

Q. —Ms. Jordan's statement states?

A. No problem. ***Everything, all papers and property, that are in Room 135 Sun Suites Inn is mine and mine alone, drugs and all. Signed, Robin J. Jordan, October 4th, 2012. Nothing belongs to anyone else who was staying with me. Marta Castro brought papers on a black bag and asked me to hold onto it for her.*** (Emphasis added).

Q. Anywhere in that statement does it mention the narcotics found in the car?

A. No, ma'am

Q. Did she take ownership of any narcotics outside of those that were found in Room 135?

A. No. Just what was in the room.

*Analysis*

Appellant argues that State's exhibit 7—Robin Jordan's written statement—was inadmissible hearsay and that permitting the State to introduce it into evidence violated appellant's right to confront and cross-examine Robin Jordan.

However, error, if any, in admitting such evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (*quoting Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998)). In other words, an error in the admission of evidence is harmless if substantially the same evidence is admitted elsewhere without objection. *See Mayes v. State*, 816

9

S.W.2d 79, 88 (Tex. Crim. App. 1991); *Prieto v. State*, 337 S.W.3d 918, 922 (Tex. App.—Amarillo 2011, pet. ref'd).

Here, Sergeant Wood testified without objection, "Once the illegal narcotics was [sic] found in the room, [Robin Jordan] writes a statement saying that everything in the room was hers and only hers. She did not want anyone else to assume responsibility or be criminally charged with anything that was found inside the room." Robin Jones's written statement similarly provided, "Everything—All papers & property are in Room 135 Sun Suites Inn is mine & mine alone, drugs and all. Nothing belongs to anyone else who was staying with me. Marta Castro brought papers in a black bag and asked me to hold onto it for her."

Other than the reference to Marta Castro, which is irrelevant to the discussion here, Robin Jordan's written statement provides exactly the same information as that contained in Sergeant Wood's unobjected-to testimony, i.e., that Robin Jones took responsibility for the drugs in room 135. Because the statement provided nothing more than that which was already before the jury without objection, error, if any, in its admission was harmless.

Accordingly, we overrule points of error one and two.

## DENIAL OF MOTION TO SUPPRESS

In his third point of error, appellant contends the trial court erred in denying his motion to suppress. Specifically, appellant argues that the information Marta

10

Castro gave the police about her ex-girlfriend being held against her will was unreliable.

*Standard of Review*

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's determination of historical facts if the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id*. "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (*quoting State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (*citing Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

*Applicable Law*

Generally speaking, "there are three distinct types of interactions between police and citizens: (1) consensual encounters, which require no objective

11

justification; (2) investigatory detentions, which require reasonable suspicion; and (3) arrests, which require probable cause." *Castleberry*, 332 S.W.3d at 466. Here, we are concerned with the second category, i.e., an investigative detention.

Under the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 (1968), a police officer may lawfully stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *State v. Arriaga*, 5 S.W.3d 804, 805 (Tex. App.—San Antonio 1999, pet. refused). Facts giving rise to reasonable suspicion may be supplied by information from another person. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

An ordinary citizen who witnesses a crime and reports his observation to police as a matter of civic duty is sometimes referred to as a citizen-informer. *State v. Duarte*, 389 S.W.3d 349, 356 (Tex. Crim. App. 2012) (quoting 2 Wayne R. Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3 at 98 (4th ed. 2004)). Such a person is presumed to speak with the voice of honesty and accuracy. *Id.* A tip from a citizen-informer placing himself in a position of accountability for the report deserves great weight. *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.). A detention based on facts supplied by a citizen-informer, which are adequately corroborated by the detaining

12

officer, does not violate the Fourth Amendment. *Brother*, 166 S.W.3d at 259. Corroboration does not require the officer personally observe the conduct giving rise to a reasonable suspicion that a crime is being, has been, or is about to be committed. *Id.* at 259 n.5 (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924 (1972); *Pipkin*, 114 S.W.3d at 654). "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* (citing *Alabama v. White*, 496 U.S. 325, 330–31, 110 S. Ct. 2412, 2416 (1990); *Pipkin*, 114 S.W.3d at 654).

*Analysis*

By accompanying police to the hotel where she believed her girlfriend was being held, Castro placed herself in a position of accountability for her report to police. *See Barnes v. State*, 424 S.W.3d 218, 223 (Tex. App.—Amarillo 2014, no pet.) (stating same). As such, her statement to police is one factor in support of a finding of reasonable suspicion by police. And, even though Castro's girlfriend was not in apartment 135 when the police initially investigated, her presence at the scene was corroborated when Castro saw her in the backseat of appellant's car and pointed her out to police.

Additionally, when appellant saw officers in the parking lot and was ordered to stop, he immediately attempted to back out of the parking lot and turn around so

13

as to avoid the police. A defendant's attempt to flee and avoid police is also a factor to consider in determining reasonable suspicion. *See Flores v. State*, 967 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (considering defendant's attempt to flee upon officer's attempt to effectuate stop in determining reasonable suspicion); *see also Illinois v. Wardlow*, 528 U.S. 119, 122, 124, 120 S. Ct. 673, 676 (2000) (holding defendant's unprovoked flight from area of heavy narcotic trafficking after noticing uniformed officers provided reasonable suspicion to detain and stating, "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such").

Finally, when appellant saw that he was being approached by police, he ducked both his hands down toward the floorboard of the car. Furtive movements are a factor when determining whether an officer had reasonable suspicion. *See Kelly v. State*, 331 S.W.3d 541, 549–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("[N]ervous behavior and furtive movements may constitute factors in determining reasonable suspicion."); *LeBlanc v. State*, 138 S.W.3d 603, 608 n.5 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Furtive movement during a police stop has been found to be a factor giving rise to reasonable suspicion."); *Zone v. State*, 84 S.W.3d 733, 739 (Tex. App.—Houston [1st Dist.] 2002), *aff'd*,

118 S.W.3d 776 (Tex. Crim. App. 2003) (furtive movement a factor in determining reasonable suspicion).

Here, Castro's report and her pointing to her girlfriend in the back of appellant's car, appellant's attempts to flee when approached by police, and appellant's furtive gestures toward the floorboard of his car are sufficient to give rise to a reasonable belief by police that a crime was being, had been, or was about to be committed. As such, the trial court did not abuse its discretion in determining that appellant's investigatory detention was properly supported by reasonable suspicion. Because the detention was lawful, the observation of the narcotics in plain view was permissible. *See Walter v. State*, 28 S.W.3d 538, 544 (Tex. Crim. App. 2000) ("[Police] legally detained [appellant] for a traffic violation. During this valid detention, [police] looked in the truck and, in plain view, he saw a bag he suspected contained marijuana. The seizure of this contraband did not violate the Fourth Amendment.").

Accordingly, we overrule appellant's third point of error.

## ASSESSMENT OF COSTS

In his fourth point of error, appellant challenges the trial court's assessment of $369 in court costs because no bill of costs appeared in the record at the time judgment was signed by the trial court.

*Applicable Law*

15

Under article 103.001 of the Texas Code of Criminal Procedure, "A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (Vernon 2006). We review the assessment of court costs on appeal to determine if there is a basis for the costs, not to determine whether there was sufficient evidence offered at trial to prove each cost. *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). Traditional sufficiency-of-the-evidence standards of review do not apply. *Id.*

*Analysis*

Appellant requests that the judgment be modified to delete the assessment of court costs because no bill of costs appeared in the record at the time the judgment was signed, thus, there is insufficient evidence to support the judgment. However, as stated above, traditional sufficiency-of-the-evidence standards of review do not apply. *Id.* Further, the record supports the assessment of costs in this case because the record contains a bill of costs that was created after the judgment was signed. *See id.* at 392 ("We conclude that a bill of costs is a relevant item that if omitted from the record, can be prepared and added to the record via a supplemental clerk's record."). There being no challenge to any specific cost or the basis for the

16

assessment of such cost, the bill of costs supports the costs assessed in the judgment. *Id.* at 396.

We overrule appellant's fourth point of error.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).